JACKSON, *ex dem.* SHULTZE AND ANOTHER, *against* GOES.

*In an action of ejectment to recover a lot of land in the military tract, on the demise of P. S. the plaintiff, produced in evidence a patent to P. S., issued in pursuance of the act of the 6th April, 1790, " to carry into effect the concurrent resolutions of the legislature, for granting certain lands promised to be given as bounty lands," &c. : the defendant proved that there was another person of the name of P. S in existence, who was too young during the revolutionary war to be a soldier, and that the lessor of the plaintiff himself had not been a soldier during the war, and it was held, that upon this evidence the defendant was entitled to judgment.*

*It is competent for a defendant in ejectment to prove that a person claiming as patentee, although of the same name, was not the patentee intended by the grant*

THIS was an action of ejectment brought to recover lot No. 39., in the town of *Manlius,* in the county of *Onondaga.* The cause was tried before Mr. Justice *Yates,* at the *Onondaga* circuit, in *June,* 1816.

At the trial, the plaintiff produced in evidence letters patent, dated the 13th of *September,* 1790, by which, in pursuance of an act of the legislature, passed the 6th of *April,* 1790, entitled " An act to carry into effect the concurrent resolutions and acts of the legislature for granting certain lands, promised to be given as bounty lands, and for other purposes, therein mentioned," the premises in question were granted to *Peter Shultze* in fee. It was proved that *Peter Shultze,* one of the lessors of the plaintiff, was now living, and had, for twenty years past, lived at *Rhinebeck,* in the county of *Dutchess.*

*Daniel Petre,* a witness on the part of the defendant, testified, that about seven years ago, he saw at a meeting of the officers of a militia artillery regiment, at *New-Hartford,* a man named *Peter Shultze,* who was a second lieutenant in the regiment, and resided at *Warren,* in the county of *Herkimer,* and was, at that time, about 31 or 32 years of age.

*Timothy Teal,* another witness on the part of the defendant, testified, that in *August,* 1812, he went to *Rhinebeck,* to see *Peter Shultze,* for the purpose of procuring evidence of the fact, whether *Shultze* had ever been a soldier in the revolutionary war, and was entitled to bounty lands, a suit being then pending in favour of *Shultze,* against one *Bristol,* for the premises in ques-

NEWYORK,
October, 1816.

JACKSON
v.
GOSS.

tion. The witness inquired of *Shultze* if he had a lot of land in the military tract, and *Shultze* said that an officer up the *Mohawk* river had drawn a lot for him, but his attorneys had told him to say nothing about it. *Shultze* further stated, that he was never up the *Mohawk* river, nor at fort *Stanwix*, and had enlisted a man during the war, and should not have known of his having a lot, had he not been informed of it by a gentleman, and he did not know how much of it he should get. The witness stated that *Shultze* appeared to be about sixty years old.

*Samuel Van Orden*, another witness on the part of the defendant, testified, that he had, about ten days before the trial, been employed by the persons under whom the defendant held, to go to *Rhinebeck* to ascertain whether *Shultze* had been a soldier during the war, and that *Shultze* told him that he was chosen a lieutenant at *West Point* and at *White Plains*, but had never served at the *Northward*, nor had been a private during the war. When the witness asked *Shultze* what he had done with his military lands, he said that one *Tillotson* had proceeded to get his land, and had lost one or two suits, that he never expected to get any thing, and had not enlisted during the war, but claimed the land in the right of a soldier whom he had hired as a substitute.

A verdict was taken for the plaintiff, subject to the opinion of the court, on a case containing the facts above stated.

*Vanderheyden*, for the plaintiff.

*Loucks*, for the defendant.

*For the Plaintiff*, it was contended, that the letters patent to *Peter Shultze* must be conclusive, unless it was issued without competent authority, or was void on the face of it, or was prohibited by some statute.*

In the case of *Jackson*, ex dem. *Horseman*, v. *Hart*,† it was held that patents granted to soldiers for military services, did not come within either of these exceptions. The commissioners of the land office, in issuing these patents, were directed by statute to adjudicate on the claims, and thus acting in a judicial character, their judgment can no more be declared void than those of a competent court of law.

If these patents are not void, but voidable only for mistake,

* *Jackson, ex dem. Mancius*, v. *Lawton*, 10 Johns. Rep. 26.
† 12 *Johns. Rep.* 77. 82.

NEWYORK, then the proper remedy is by *scire facias*, out of chancery, to October, 1816. vacate them; on which the patentee, or in case of his death, his legal representatives, must be summoned to show cause.

JACKSON
v.
GOES.

The consideration of letters patent can no more be inquired into by a court of law, than the consideration of a deed.

The defendant cannot set up any title in the state, for such title must be inchoate only, and it requires certain proceedings in chancery to revest the property in the state; as, in ejectment, the tenant cannot set up the *alienage* of the lessor of the plaintiff, before *office found.*\* Could the state take possession of this lot without a previous application to a court of chancery to vacate the patent? And if an action of ejectment should be brought in the name of the people, might not a tenant show a title out of the lessors, by producing the letters patent to *Peter Shultze?*

\* *Jackson* v. *Beach.* 1 *Johns. Cas.* 401.

There can be no necessity, in this case, of resorting to parol evidence; for it is not pretended that the grant was for any person but the lessor. There is no latent ambiguity, as there is no person of a similar name claiming title to the premises, as was the case in *Jackson*, ex dem. *Dickson and others*, v. *Stanly*,† and *Jackson*, ex dem. *Houseman*, v. *Hart*.

† 10 *Johns. Rep.* 133.

Again; the tenant in possession has a mere naked occupancy, a species of title which the *Chief Justice*, in *Jackson* v. *Hart*, contrasted with that of the defendant.

That it was proved at the trial that the lessor of the plaintiff confessed he had never served in the line of the army, is perfectly immaterial; as no consideration of military services is expressed in the letters patent, that fact cannot be inquired into in a court of law.

On the production of the letters patent, in this case, the plaintiff is entitled, *prima facie*, to recover. The *onus probandi* lies on the defendant to show the title to be in the person under whom he claims. It is no answer to the plaintiff's claim, that there is a person of the same name with the lessor, without showing a title to the premises in such person. Besides, how is it certain, that the person proved by the defendant is not, in truth, the lessor of the plaintiff?

*For the defendant,* it was argued, that on the principles admitted in the case of *Jackson*, ex dem. *Houseman*, v. *Hart*, the correctness of which decision it was not intended to question, the defendant was entitled to judgment in his favour. The court there said the patent was conclusive, that the paten-

tee named was the person intended by the legislature; and that where a person of a different name claimed the land, parol evidence was not admissible to explain that intention. It was agreed, however, that if there were two persons of the same name, it would be a latent ambiguity, and parol evidence was admissible to explain which of the two was intended.

The lessor 'of the lessor, no doubt, on producing the patent, is, *prima fucie*, entitled to recover; but the defendant having proved the existence of another person of the same name, the burden of proof, as to the identity of the patentee, is thereby thrown on the plaintiff; for the plaintiff in ejectment must, emphatically, recover on the strength of his own title.

By the act of the legislature, a certain district of country was set apart for the two regiments of this state, serving in the army of the *United States*, and no patents were to be issued to any other persons. This is a public act of which the court are bound to take notice. The patent in question was granted for a lot of land in the tract discribed in the act; and the intention of the legislature is thus made manifest by the act. The act and the patent are to be taken together; and it clearly appears from them, not only that a person of the name of *Peter Shultze* was intended, but that he was a soldier; and if the defendant, on the trial, shows that the lessor of the plaintiff was not a soldier, that fact will be sufficient to prevail over the mere circumstance of a similarity of name.

PLATT, J., was of opinion that the plaintiff was not entitled, to recover, and thought the case clearly distinguishable from that of *Jackson*, ex. dem. *Houseman*, v. *Hart* the principle of which decision he held to be sound law.

YATES, J., and VAN NESS, J., declared themselves to be of the same opinion.

SPENCER, J. The court being unanimously of opinion that the defendant is entitled to judgment, but, for different reasons, it is rendered necessary for me to state, very briefly, the grounds of my opinion.

It is a general and universal rule in this action, that the plaintiff is to recover on the strength of his own title, and unless the defendant is estopped from controverting the plaintiff's title, he may rest on his possession, and attack the title under which the plaintiff claims. The grant under which the lessor deduces

his title was issued under the act to carry into effect the concurrent resolution and acts of the legislature for granting certain lands, promised to be given as bounty lands; and by reference to those resolutions and acts, it will be seen, that the objects of that bounty were the officers and soldiers serving in the army of the *United States,* in the line of this state, to wit, *Lamb's* regiment of artillery and two regiments of infantry. The letters patent to *Peter Shultze* were, undoubtedly, intended, to vest in him, as a soldier in one of those regiments, a title to the lot in question, as a bounty for his services in that capacity. It is perfectly clear, that the lessor of the plaintiff cannot be *the Peter Shultze* to whom the grant was made, because the lessor confessedly was not a soldier in the revolutionary war. It is equally certain, that *Peter Shultze,* who resided, seven years before the trial, at *Warren,* in *Herkimer* county, could not be entitled to military bounty for revolutionary services; for, according to the case, he was born about the year 1777, and the war terminated in 1783, at which time he was about six years of age. I am of opinion, that, independently of the existence of *Peter Shultze* of *Warren,* it would have been competent for the defendant to show that the lessor of the plaintiff, *Peter Shultze* of *Rhinebeck,* was not the patentee, and had no title, merely from the adventitious circumstance of a similarity of name with the patentee, to recover possession of the premises; this opinion, it appears to me, is warranted by the unanimous judgment of the court, in *Jackson* v. *Stanley,* (10 *Johns. Rep.* 133.)

In the subsequent case of *Jackson* v. *Hart,* (12 *Johns. Rep.* 77.,) though I took no part in that decision, having been unavoidably absent when it was argued, I understand from the opinions expressed, that it was not intended to shake, much less to overrule, the prior decision in *Jackson* v. *Stanley.* The identity of a grantor, in many cases, is a latent ambiguity. The deed is, on the face of it, free from ambiguity; the extrinsic or collateral matter out of the instrument, produces the ambiguity. The case, commonly put, is where there are two persons of the same name, to both of whom the description in the deed is equally applicable; parol proof is then resorted to, to show to which of the two the deed was intended to be given. Lord *Cheneyes'* case (5 *Co. Rep.* 68. *b.*) is the earliest case on the subject, and has never been doubted. I cannot think it was necessary for the defendant to prove that there were two persons in existence, at the time of the trial, of the name of *Peter Shultze,* in

order to be let in to show that the lessor of the plaintiff was not
the patentee. There, undoubtedly, was such a man, who served
in the army of the *United States*, in the line of this state ; this
is proved by the letters patent ; then why was it not admis-
sible to the defendant, to show that *Peter Shultze* of *Rhinebeck*
was a different man ? It seems to me, that the proof that there was
another *Peter Shultze* living at the time of the trial was making
no progress in disaffirming the pretension set up by the plaintiff,
that his lessor was the patentee, when it clearly appeared that
this *Peter Shultze* could not possibly be the patentee ; the only
effect of this was to show, what required no proof, that there are
many persons in the state of the same christian and surname.

In this action, whenever the plaintiff introduces a deed con-
veying the premises to a person of the name of his lessor, it is
*prima facie* evidence that the lessor is the real grantee ; the bur-
den of disproving this, and repelling the presumption, is thrown
on the defendant, and he may prove that the deed was grant-
ed to a different person of the same name. If it be not
so, then any man who can find a deed on record, to a per-
son of the same name, may use it for very mischievous purposes.
If the lessor of the plaintiff is not the patentee, then he has no title
to the lot ; and may not the defendant who is in possession, and
can protect himself against every one but the true owner, show
all the necessary facts to make out that the lessor has no title to
the premises ? Such proof does not vary or contradict the deed,
but is perfectly consistent with it. It admits the grant to have
been correct, but shows that the lessor is not what he assumes
to be, the person to whom it was made, and that he has no right,
not being the patentee, to turn the defendant out of possession.

Without being influenced at all by the evidence that there
was another *Peter Shultze* in existence at the time of the trial, or
a few years before, my opinion proceeds on the ground that the
lessor of the plaintiff is proved not to be the patentee, and I
hold that proof to have been correctly given.

THOMPSON, Ch. J. I concur in giving judgment for the de-
fendant. I had come to a different conclusion, supposing that
this case could not be distinguished from the case of *Jackson* v.
*Hart*, (12 *Johns. Rep.* 77.) But, as I dissented from the opi-
nion of the court in that case, and my brethren who were parties
to it, thinking it is not in the way here, I feel no hesitation in
saying the plaintiff is not entitled to recover. I put it on the

ground, however, that neither *Peter Shultze*, the lessor of the plaintiff, nor the other *Peter Shultze* mentioned in the case, was the person intended as the patentee; it appearing, by the case, without entering particularly into the testimony, that the latter was not born at the commencement of the revolution, and the former not coming within the description of the persons mentioned in the act of the legislature, under which the patent was issued, and *to which it refers*. That the identity of the patentee is a matter that may be inquired into in this collateral way, is settled by the case of *Jackson* v. *Stanley*, (10 *Johns. Rep.* 136.,) and which case I understand it was not intended to overrule by the decision in *Jackson* v. *Hart*. An inquiry as to the identity of the patentee, does not, in any manner, contradict, or make void, the patent; nor does it imply that there is not a person *in esse* capable of taking under the grant. It only goes to show that the person claiming to be the patentee was not such person. If it should appear that he was the person intended, the inquiry must there stop. If the commissioners of the land office had mistaken their powers, and made a grant to a person not coming within the description in the act, and the patent was sought to be vacated on that ground, there can be no doubt that it must be done by some direct judicial proceeding. But an inquiry into the identity of a patentee, would not come within the scope of a *scire facias*. This can only arise when some person comes forward to assert a right under the patent; it is then, and then only, that it can be objected to him, that he is not the patentee, although he may have the same name. It is altogether a mistake that such an inquiry is an attempt to vacate the patent. It leaves it in full force and effect, according to its original intention and operation. This is not a naked grant to *Peter Schultze*. The patent refers to the act under which it was issued, containing a description of the persons intended to be embraced within the bounty of the legislature. This may be considered as matter of description adopted by the patent, and which necessarily opens the door to let in the inquiry, whether the person claiming to be the patentee answers such description? The identity of the grantee, as well as of the thing granted, must, generally speaking, partake, more or less, of a latent ambiguity, explainable by testimony, *dehors* the grant. It cannot be that this inquiry is restricted to the single case of ambiguity occasioned by there appearing to be two persons bearing the name of the patentee.

I can discover no sound reason for such restriction, and I am persuaded that the rule, thus understood, is too limited to meet all the cases that may arise, necessarily requiring its application. It is, therefore, upon the broad ground that it is always open to a defendant in ejectment to show that the lessor of the plaintiff is not the person intended by the patent under which he sets up his claim, although he may bear the same name, that I concur in the judgment for the defendant.

<div style="text-align:right">NEW YORK, October, 1816.</div>

Judgment for the defendant.