GERRIT WENDELL, ROBERT MORRIS, and JOHN MAT-
THEWS, Appellants,
*against*
JAMES WADSWORTH, Respondent.

APPEAL from the Court of Chancery. The respon-
dent filed his bill, *May* 29, 1817, against the appellants,
stating, among other things, that *John Thomas* was a sol-
dier in the second *New-York* regiment of artillery, during
the revolutionary war, and became entitled to a grant from
the State of 600 acres of land, for his military services.
That on the 9th of *July*, 1790, letters patent were, accord-
ingly, issued to him, for lot No. 11, in the township of
*Solon.* That on the 5th of *September*, 1789, the said *J. T.*,
being so entitled to military bounty land, for a valuable
consideration, sold, quit claimed, and confirmed to the re-
spondent, his heirs and assigns, for ever, all the right, title,
and demand of him, the said *J. T.*, to military bounty
lands, &c., with a covenant for further assurance, and a
power of attorney to obtain letters patent for the land.
This instrument of transfer concluded in these words : "In
witness whereof, I have hereunto set my hand and seal, this
5th day of *September*, A. D. 1789 ;" and was signed by *J.
T.* with his mark ; but no seal was affixed to it, though it was
witnessed by two witnesses, as " signed, sealed, and deliver-
ed," in their presence. The instrument was deposited and
filed in the office of the clerk of the county of *Onondaga*,
according to the directions of the statute, on the 29th of
*April*, 1795 ; and the execution of it was proved, in due
form, before a master in chancery, on the 28th of *March*,
1799. *J. T.*, the soldier, died intestate. The appellants,
who are in possession of the lot, claimed title to it, under a
conveyance, as they alleged, from the soldier, which con-
veyance, if any, the respondent alleged, was obtained sub-
sequent to the execution and deposit of the instrument
to him, as aforesaid, and with legal notice thereof.
About five years since, the plaintiff brought an action of

A *deposit* of
deeds and con-
veyances, pur-
suant to the
"act for re-
gistering deeds
and conveyan-
ces, relating to
military boun-
ty lands,"
passed 8th of
*January*, 1794,
(sess. 17. ch. 1.
s. 1. 2 *N. R.
L.* 262.) and
the act to a-
mend the
same, passed
*March* 27,
1794, (sess.
17. ch. 44. s. 1.
2 *N. R. L.*
265.) in the
office of the
clerk of the
county of *O-
nondaga*, is
not *legal no-
tice* to subse-
quent purcha-
sers ; nor is it
equivalent, in
that respect,
to a *registry.*

ejectment in the Supreme Court, against the appellants, which was tried in 1814, and a verdict found for the plaintiff, subject to the opinion of the Court, who decided, in October, 1815, that the instrument so deposited and filed by the plaintiff, not being under seal, was insufficient to convey the legal estate ; and, on that ground, set aside the verdict, and gave judgment against the respondent.   The bill prayed a discovery, and for relief generally.

The answer admitted, that *J. Matthews*, the appellant, was in possession of the lot, by permission of *W.* and *M.*, the other appellants, to whom and *J. M.* the lot, with other lands in *Solon*, were devised by *David Matthews*, of *Vermont*, *in trust*, for the children of the testator, named in the will, which was dated *August* 29, 1810.   That *D. M.*, the testator, derived his title, as follows :  *John Thomas*, to whom letters patent for the lot was granted, bearing date *January* 9, 1790, by his deed, dated *October* 25, 1796, conveyed the lot in question to *William Preston*, in fee, for the consideration of 160 pounds, with covenants of seisin, &c. and warranty, which deed was acknowledged the same day before a master in chancery, and, on the 15th of *February*, 1797, recorded in the office of the clerk of *Onondaga*.   *Preston*, by a deed, bearing date *August* 29, 1797, conveyed the same lot to *David Matthews*, the testator, for the consideration of 400 pounds, excepting 50 acres, in the south east corner ;  which deed contained full covenants, and a warranty, and was duly acknowledged *August* 30, 1797, and, on the same day,  recorded in the office of the clerk of *Onondaga*.   *D. M.*, the testator, died *March* 29, 1811, and the appellant, *J. M.* is his son.   That *D. M.* paid *Preston* for the lot 750 dollars, and delivered him a mare, of the value of 250 dollars.   That in 1798, or 1799, one *Levi White* took  possession of the lot under *D. M.*, and possession has ever since been held under the title of *D. M.* That improvements have been made on the lot to the value of 3,000 dollars.   That *D. M.*, when he purchased, had not, as the appellant, *J. M.*, verily believed, any knowledge of the instrument held by the respondent, or of his claim to the lot ;  nor did he know of it, for many  years afterwards, though he heard of the respondent's claim before his death.

That, in 1799, the appellant, *R. M.*, the son-in-law of *D. M.*, went into possession of part of the lot, and remained in possession until 1803, and never heard of the respondent's claim until 1800. The appellants admitted, that the respondent had brought an ejectment, and the proceedings and judgment, as stated in the bill.

IN ERROR.
........

ALBANY,
Nov. 1822.

WENDELL
v.
WADSWORTH

There was a general replication, and the cause was brought to a hearing on the pleadings and proofs. The Chancellor, on the 3d of *May*, 1821, decreed, that the appellants, within forty days, release and convey to the respondent, in fee, all the right, title, and interest, derived to them, as trustees, by and under the will of *David Matthews*, of, in, and to, the lot in question. From this decree, an appeal was entered to this Court.

The CHANCELLOR assigned the reasons for his decree; for which, see S. C. 5 *Johns. Ch. Rep.* 224. 227. 231.

*Henry*, for the appellants, stated the following points :

1. That the instrument of the 5th of *September*, 1789, under which the respondent claims title to the lot in question, not being under seal, or a deed, no legal estate passed, but it vested in the respondent a mere equitable interest, and made the patentee a trustee for him.

2. That *William Preston* and *David Matthews*, under whom the appellants derive title, were *bona fide* purchasers, for a valuable consideration, without any actual or constructive notice of the trust ; and, therefore, they hold the estate discharged from the trust.

3. That on the ground of a constructive notice, actual notice being fully denied in the answers, and not proved by the respondent, a conveyance of the legal estate ought not to have been decreed, without an account and payment of all sums laid out for the permanent benefit and improvement of the estate, with interest from the times of disbursement, deducting the rents and profits. He cited 1 *Johns. Ch. Rep.* 300. 2 *Vesey*, jr. 554. 507. *Newland on Contr.* 515. 8 *Johns. Rep.* 137. 141. 1 *Ch. Cases*, 535. 2 *Ch. Cases*, 20. 208. 4 *Cruise's Dig.* 343. 349, 350. 4 *Vesey*, jr 389. 8 *Bro. P. C.* 42. *Sugden's Law of Vend.* 402.

IN ERROR.

. . . . . . .

ALBANY,
Nov. 1822.

WENDELL
v.
WADSWORTH

*Van Vechten,* contra, insisted on the following points :

1. That the instrument of the 5th *September,* 1789, from John *Thomas,* the patentee, to the respondent, created such an equity as bound the lot in question in the hands of the patentee, his heirs and assigns, from the time the instrument was deposited and filed in the office of the clerk of *Onondoga,* on the 29th *April,* 1795.

2. That the appellants are chargeable with notice of that instrument, in consequence of the deposit and filing thereof, in the clerk's office of *Onondaga,* pursuant to the existing statutes, prior to the deed from *John Thomas* to *William Preston,* of the 25th *October,* 1796, under which the appellants claim to derive their title ; and they are, therefore, bound by the respondent's equity.

3. That the appellants, being chargeable with legal notice of the trust from the time of the deposit of the equitable conveyance from *J. Thomas* to the respondent, and with actual notice from 1806, are not entitled to any allowance for improvements. He cited *Newland on Contracts,* 504. 511. 2 *Powell on Contracts,* 38. 1 *Caines' Rep.* 8. 1 *Johns. Ch. Rep.* 27. 394. 2 *Johns. Rep.* 524. 18 *Johns. Rep.* 564. 2 *Atk.* 54. 2 *R. L.* (*K.* and *R.*) 262. s. 1. sess. 17. ch. 1. and p. 265. ch. 44. s. 1. *Act of the legislature, passed July* 25, 1782, *and the concurrent resolutions of March* 27, 1783. *Act of May* 11, 1784. s. 10, 11. *Act of February* 28, 1789. *Act of April* 6, 1790. *Act of January* 8, 1794. s. 1. *Act of March* 27, 1794. s. 1.

SPENCER, Ch. J. It is perfectly clear, that although *Thomas* had not a patent until 1790, yet any deed of conveyance made by him subsequent to the 27th of *March,* 1783, would have been valid, under the act of the 6th of *April,* 1790, and would have conveyed all his subsequent interest. It is, also, well settled, and has not been drawn in question, that the paper writing from *Thomas* to *Wadsworth,* did not operate as a conveyance of the lot, for want of a seal. (12 *Johns. Rep.* 74.) It is equally certain, that as between *Wadsworth* and *Thomas,* and their heirs, the agreement being founded on a valuable consideration, would be

carried into effect in a Court of equity, by decreeing a speci-
fic execution thereof, by a conveyance in fee. It admits of
as little doubt, that if *William Preston*, and *David Matthews*,
both of them, had actual knowledge of the agreement be-
tween *Wadsworth* and *Thomas*, when they respectively took
their deeds, they and their heirs would be compellable to
convey to *Wadsworth*. But there is no proof, nor pretence
of proof, that either *Preston*, or *Matthews*, had such actual
notice. The ground of the decree, and of the doctrine laid
down by the Chancellor, is, that under the act of the 8th of
*January*, 1794, the paper writing from *Thomas* to *Wads-
worth*, having been deposited, amounts to constructive no-
tice ; that is, that the writing having been deposited in the
clerk's office, was notice to every subsequent purchaser, of
the contents of that paper ; and such subsequent purchaser
was bound to take notice of it, and purchased at his peril.
The Chancellor has considered the deposit of these con-
veyances as intended by the legislature to be notice to all
subsequent purchasers of their existence and contents ; and
that the deposit of them would have been, in a degree, use-
less, if it was not intended to operate as notice. The depo-
sit, he says, as to all deeds and conveyances made prior to
the act, was intended as a substitute for the prior registry,
and to be, from the date of the deposit, equivalent to the
recording ; and he considers the terms of the statute com-
prehensive enough to embrace the case of the respondent's
conveyance, for that it reached to every instrument of, or
concerning those lands, and whereby they may be affected
in law or equity ; and he concludes, that the same construc-
tion ought to be given to this act, as to the act for the
registry of mortgages.

I think it admits of much doubt, whether the act of the
8th of *January*, 1794, did embrace the respondent's case.
The words are, " all deeds and conveyances heretofore made
and executed." Now, it would seem to me, that " deeds
and conveyances," mean the same thing ; that they are used
as synonymous expressions ; and that, therefore, no paper
which was not a *deed*, and did not *convey* the land from the
grantor to the grantee, was within the words of the statute,
or its meaning and intent. But I do not think it necessary

IN ERROR.

ALBANY,
Nov. 1822.

WENDELL
v.
WADSWORTH

to discuss this point, as I have come to a satisfactory conclu-- sion on the other.

The preamble to the statute of the 8th of *January*, 1794, fully demonstrates the object and intention of the legislature, in that enactment; it states, that many frauds have been committed with respect to the titles to the lands granted by this state as bounty lands, to the officers and troops, &c. by forging and antedating conveyances, and by conveying the said lands to different persons, and by various other contrivances, so that it has become extremely difficult to discover in whom the legal title to some of the said lands is now vested; for remedy whereof, and in order to detect the said frauds, and to prevent the like frauds in future, the legislature enact, that all deeds and conveyances theretofore executed, of, or concerning those lands, or whereby they may be any way affected in law or equity, shall, on or before the first day of *May*, 1794, be delivered to, and deposited with the clerk of the city of *Albany;* and all deeds and conveyances, (except mortgages duly registered,) theretofore made and executed, whereby any of the said lands may be affected, in law or equity, which shall not be delivered to and deposited with the said clerk, on or before the first day of *May* aforesaid, shall be adjudged fraudulent and void against the subsequent purchasers, or mortgagees for valuable consideration. The act, then, directs the clerk of *Albany* to register the names of every person, whose name shall be to any deed as having executed the same, in a book to be by him provided for that express purpose, in alphabetical order, and annex to such name the date of the deed, and the name of the person to whom the same is granted; the deeds are directed to be filed in bundles, marked in alphabetical order, " *to the end that persons inclining to have recourse thereto, may inspect the same, paying the usual fees for search and inspection.*"

The act then goes on to provide for future deeds, thereafter to be made and executed; and it declares them void against subsequent purchasers for valuable consideration, unless they are recorded before a record of the deed under which the subsequent purchaser shall claim; provided that

no deed shall be recorded, unless the same be duly acknow- ledged in the manner required by law.

IN ERROR.
........

ALBANY,
Nov. 1822.

WENDELL
v.
WADSWORTH

I may venture to say, that, according to my knowledge or understanding, the construction put upon this statute, by the Chancellor, is such as was never anticipated by the profession, nor imagined by the legislature; and with the utmost deference, I must say, that, in my judgment, it cannot be supported. This act was considered, at the time of its being passed, as a high stretch of legislative authority. It was, however, universally approved, from the necessity of the case. The reasons which led to it are prefixed to the act itself. Various frauds and forgeries had been committed in relation to these military lands; deeds had been antedated, and the same lands had been conveyed to different persons. That section of country was becoming valuable and inviting to settlers; and it was deemed very essential to have the lands settled. Under these circumstances, as a means to detect the frauds and forgeries, it was judged highly necessary and expedient to call these deeds out of the hands of the holders of them, to bring them all together, *to the end that persons inclining to have recourse thereto, might inspect the same.* The legislature express not only the reasons for passing the act, but the object also, which was to *give persons inclining* to inspect the deeds, the means of doing so. It seems to me, that this declaration of the object of passing the act, was purposely introduced to prevent any misconstruction; and that it negatives every idea, that subsequent purchasers were required, at their peril, to examine the deeds thus deposited. It amounts to this only; that such persons as choose to inspect them, may do so. How widely different is this permission to inspect these deeds, from a requirement that they must be inspected; and whether they are or not, that the mere deposit of them shall be notice to all subsequent purchasers?

It is true, that the doctrine is now wisely and correctly established, that the registry of a mortgage is notice to all subsequent purchasers, and mortgagees. (2 *Johns. Rep.* 524. 18 *Johns. Rep.* 564.) This principle has many exceptions and qualifications under the *English* registry acts, which are not important to be traced or examined. But

there is a wide and manifest distinction between the act of the 8th of *January*, 1794, and the act concerning mortgages. In the first place, no mortgage can be registered until its authenticity is established, either by the acknowledgment of the mortgagor, or proof of its due execution before a public officer intrusted with powers for that purpose; and there is an express provision, that in case of several mortgages of the same premises, the mortgage first registered shall have preference according to the time of the registry ; and it is further expressly provided, that no mortgage shall defeat the title of any *bona fide* purchaser, unless it be duly registered. Thus giving mortgages effect according to the priority of registry, and, by strong and necessary implication, declaring that they shall defeat the title of even a *bona fide* purchaser, if duly registered.

If we recur to the provisions of the act of the 8th of *January*, 1794, we find, that the deeds required to be deposited, were not required to be authenticated by any acknowledgment or proof. Many of them were, confessedly, forged ; others had been antedated, and various frauds had taken place in relation to them. Under such facts, is it possible to conceive, that the legislature meant to have such deeds, with respect to which there was such alarm and suspicion, so far accredited as that the depositing of them should be notice to subsequent purchasers? Did they mean to impede, and destroy the free alienation of these lands to *bona fide* purchasers, for valuable consideration, upon the contingency, that if, in this mass of deeds and papers, any of them were genuine, but not legally operative, that future purchasers should take notice of them at their peril? I think manifestly not. When, therefore, the legislature required these unauthenticated, unacknowledged, unproved, and unrecorded deeds, to be deposited by a fixed day, and declared, that if they were not thus deposited, they should be adjudged fraudulent and void against subsequent purchasers for valuable consideration, they could not have intended to give greater effect to them than they had before, or to give them any preference over subsequent deeds, or to require subsequent purchasers, at their peril, to take notice of them. If the deeds or conveyances deposited, should prove to be

authentic and operative, the grantors would hold under them ; but if they were defective and inoperative to transfer the title, they created no impediment to future transfers to *bona fide* purchasers for valuable consideration.

We perceive, that, as regards mortgages, there is no express declaration in the statute, that a registered mortgage shall be notice to subsequent purchasers; but we find a strong and irresistible implication, that they shall be notice. There is no such implication in the act of the 8th of *January*, 1794; but, I apprehend, there is a negation of any implication of notice, when the end of their being deposited is merely to give such persons as incline to have recourse to them, a right to inspect them. This is provided as a facility to individuals, but is not enjoined as a duty.

It was intimated, on the argument, that the principle of this decree would open the door most widely to litigation. I confess, without pretending to any knowledge of the fact, that I apprehend much confusion and litigation will arise, should the doctrine laid down by the Chancellor be confirmed ; but I am not influenced by any such considerations. My opinion is, that the deposit of these deeds is not notice, and never was intended to be notice, *per se*, to any subsequent *bona fide* purchasers for valuable consideration. Having come to this conclusion, most fully and satisfactorily, I abstain from considering the question of improvement, not because it has any difficulty, but because I consider it wholly unnecessary. My opinion is, that the decree appealed from ought to be reversed, and that the proceedings be remitted, with directions that the respondent's bill be dismissed, with costs, to be taxed to the appellants, in the Court below.

PLATT, J., and WOODWORTH, J., concurred.

This being the unanimous opinion of the Court, it was thereupon ORDERED, ADJUDGED, and DECREED, that the decree of the Court of Chancery be, in all things, reversed ; and that the bill of the complainant in the Court of Chancery be dismissed, with costs to the appellants in the Court below, to be taxed ; and that the record be remitted, &c.