Curia, per Sutherland, J.
The patent to William Patterson, for lot number 43 in the town of Cicero, in the county of Onondaga, of which the premises in question are a part, was duly proved. It bears date on the 13th of Sept. 1790, and passed the secretary’s office the 21st day of March, 1792.
An exemplified copy of the balloting book belonging to the office of the clerk of Cayuga, and filed in that office pursuant to the statute, was also produced and duly proved ;• from which it appeared, that William Patterson *155 drew the lot for his services as a soldier in the revolutionary war, and that the lot was patented to him the 13th of September, 1790. He is described in the balloting book as a private in Hazen’s regiment. The plaintiff next produced a deed for the lot purporting to have been executed by William Petterson, describing him, however in the body of the deed, as William “ Patterson, late a soldier in the revolutionary war, in Hazen’s regiment,” to John Blanchard of the city of New York, gentleman, bearing date the 6th day of December, 1790. This deed was duly acknowledged, and was recorded in the clerk’s office of Onondaga county, on the 8th of June, 1808. It was objected to as not being from William Patterson, the patentee, but from William Petterson. The objection was overruled, and this presents the first point in the case.
In Jackson ex dem. Miner v. Boneham, (15 John. 226,) the name of the soldier to whom the patent was issued, was Moses Minner. The lessors claimed as heirs at law to Moses Miner, and proved that their ancestor was a soldier in the New York line. The court say, “ the only difficulty in the case arises from the name being spelled Minner instead of Miner. It is evident that the soldier under whom the lessors claim, wrote his name Miner; and if it had been shown that there had been in the army any man by the name of Minner, the patent would be deemed to have issued to him. But nothing of that kind appearing, it must be considered a *mere mispelling of the name, which cannot affect the identity of the person; nor is it such a difference in the spelling as to make it a distinct name.” The difference in sound between the two names in that case, as they are ordinarily divided and pronounced, is greater than in the case now before the court. The letter e is often pronounced broad like a, and the two names when spoken by the mass of ordinary men, in common and rapid conversation, would be pronounced alike. In Jackson v. Boneham, there was no identification of the soldier for whom the patent was intended, except his name. The regiment or company to which he belonged was not shown. In the case at bar, the balloting bo ok, (which is the authority on which the patent issues,) describes the *156 soldier for whom it was intended, as a private in Hazen’s regiment; and the deed describes the grantor therein, as William Patterson, late a private in Hazen’s regiment; reaving no doubt that the grantor meant to represent himself as the person to whom the patent had issued; and it not having been shown that there was any soldier in that regiment by the name of Patterson, I am of opinion that the evidence of identity was, prima facie sufficient. The cases of Jackson v. Stanley, (10 John. 133,) Jackson v. Hart, (12 John. 77,) and Franklin v. Talmadge, (5 John. 84,) have also some bearing on this question.
It would have been competent for the defendant to have shown, that the grantor in the deed to Blanchard was not the patentee intended by the grant from the state. (Jackson ex dem. Shultze, v. Goes, 13 John. 518.)
2. The deed from Blanchard and wife to Asa Danforth was objected to, as not having been sufficiently proved. It bore date of the 27th of March, 1792, and was witnessed by John Durham and Phineas Pierce.
It was proved that Pierce left the state more than twenty •years before the trial, and was said to have died ; and his hand writing was proved. The deed describes the grantors as being of the city of New York. It was proved that diligent inquiry had been made there for the other witness, Durham, and that he could not be found, nor any trace of him discovered there. But the witness subsequently learned *that a man of that name once lived in the city of New York, and afterwards in Newton, Tioga county, where he died. He had also a son of the same name, who died at Newton about a year before the trial. Benjamin Durham testified that his grandfather’s name was John Durham, that he had lived in New York, as the witness understood, and died previous to 1804. The witness’ father’s name was also John Durham, and he was dead. He also produced an instrument purporting to have been executed by John Durham, which the witness understood to be his grandfather’s hand writing. It had been long in his possession ; and he had' no other knowledge of his grandfather’s hand writing than from that instrument. From such knowledge, the witness testified, that he believed the hand *157 writing subscribed to the deed from Blanchard and wife to Danforth, was the hand writing of John Durham, his ' grandfather.
The defendant proved that there were, within a few years before the trial, two men of the name of John Durham living within this state, of the age of between 50 and 60. It also appeared, that there were two men of the name of John Blanchard residing in New York in 1792; and the defendant claimed under a deed from one John Blanchard to Justus McKinstry, bearing date the 7th of November, 1817. The grantor was described as being late of the city of New York; and, in addition to the objection to the proof of the plaintiff’s deed from John Blanchard, it was contended that he was bound to identify the John Blanchard under whom he claimed.
It was undoubtedly necessary for the plaintiff to show, with reasonable certainty, that Durham, the other witness to the deed, was either dead or beyond the jurisdiction of the court. [1] Proof that he could not be found or heard *158 'of, Upon diligent search "or inquiry; Would be evidence of his death or absence.
If the testimony of Benjamin Durham was admissible, (and it Was not objected to,) it identifies the Witness to the deed, as his grandfather, who died previous to 1804.
1 am inclined to think his testimony was admissible fot that purpose-. He Was in possession of an instrument in the hciñd Writing of his grandfather; and, from the knew* lodge of his hand Writing, acquired from that instrument, Which had been long ih his possession, he believed the hand Writing to thé d-e'éd from Blanchard to Danforth to be his grandfather’s-. If so, his "grandfather was the witness to the deed, and being dead, the proof of the hand writing of the other witness Was sufficient. [1]
But whether competent or not, as it was not "objected to, it must be considered Us received by consent-.
As to the identity of -Blanchard-, the grantee from the soldier, and the grantor in the deed to Danforth, the rüle as laid down by Judge spencer, in Jackson v. Goes, (13 John. 523,) is this: “ Whenever the plaintiff introduces a deed conveying "the premises to & person Of the name of Ms lessor, it is prima facie evidence that the lessor is the teal grantee. The burthen -of disproving this, and -repelling the presumption, is thrown on the defendant ; and -he may prove that it Was -granted to a different -person of the -same haMe.” But it is not sufficient for him tb prove "that there *159 Was another person of the same name. He must prove that he was the person to whom the grant was made; otherwise the prima facie evidence of the plaintiff is not repelled.
It must be entirely immaterial, whether the question of identity relates to the lessor, or to a previous grantee from whom the lessor derives his title. The rulé laid down in Jackson v. Goes is expressly recognized and reiterated in Jackson v. King, (5 Cowen, 241.)
The defendant cannot now object the doctrine of Wendell v. Wadsworth, (20 John. 659,) that the deposit of the deed from Blanchard to Danforth was not notice to subsequent bona fide purchasers. The question of notice Was not raised at the trial. If any objection had been taken by the defendant on that ground, non constat, but actual notice might have been brought home to him.
The counsel were not precluded from golttg to the jury. The case states that the counsel for the defendant rose to address the jury, when the judge stated his views of the case, and remarked, in conclusion, that he should charge the jury that the plaintiff was entitled to recover five ninths of the premises in question; upon which the defendant’s counsel *omitted to sum up the cause. This was a voluntary, not a compulsory relinquishment of his right to address the jury.
The motion for a new trial must be denied.
New trial denied.

 If a witness cannot be found after diligent inquiry, it is the same as if he were dead. Jackson v. Chamberlain, 8 Wen. 620. Spring v. The South Carolina Co., 8 Wheat. 269. Or, if he is out of the jurisdiction of the court, it is sufficient to authorize proof of his hand writing. Teall v. Van Wyck, 10 Barb. 376.
As to what shall amount to diligent inquiry, see per Tract, Senator, in Jackson v. Waldron, 13 Wen. 199. Pettereau v. Jackson, 11 id. 110, 111, 123. Per Kent, C. J., in Jackson v. Beerton, 11 John. 65. Conrad v. Farrow, 5 Watts, 537. Cunlifie v. Sefton, 2 East, 183. Crosby v. Percy, 1 Taunt. 365. Morgan D. Morgan, 9 Bing. 359. Evans v. Curtis, 2 Carr. & P. 296. The rules and practices of the court leave this point latitude of discretion, 11 John, supra, and this discretion is the subject of review, 13 Wen. supra. In 2 Cowen. & Hill’s notes to Phil. Ev. 382 et seq. this subject is treated at length, and a synopsis of all the judicial decisions thereon given.
The necessity of actual inquiry may be superseded by presumptions arising from circumstances. Thus when an attested instrument is executed in another state, the witness is presumed to be beyond the jurisdiction of the court. Barfield v. Hewlett, 4 Mill. Low. Rep. 118. Crouse v. Duffield, 12 Mart. Low. Rep. 539.
In some cases the amount of diligence required, depends on the value of the instrument. 1 Taunt. 364, 5, 6. But this distinction has been repudiated by Lord Ellenborough. Wardell v. Fermor, 2 Camp. 282, 284. But an evident design of the witness to withhold his testimony from the party seek *158 ing it, will dctefmine in many caaes, as to the necessity of further inquiry. Baker v. Blount, 2 Hayw. 404. See Kay v. Brookman, 3 Carr. & P. 555, 2 Cowen & Hill’s notes, 385. Especially if -there "be good reason to suppose it is attributable to collusion with the-other party. Mills v. Twist, 8 John. 121. Hill 8. Phillips, 5 Carr. & P. 359.. And this, if clearly shown, is sometimes, in itself sufficient. See Prytt v. Moore, 6 Moore, 539. Per Heath J., in Gipson v. Minet, 1 H. Black. 623. Per Haywoob, in Ingram 8. Hall, 1 Hayw. 207. Hearsay is evide'nbe tif death, subject precisely to the same fixles "arid restrictions" ah in relation to pedigree. See Fosgate v. Herkimer, Man. & Hydraulic, Co. 12 Barb. 353, 358. An'ohitubry notice, in a nbws. paper published in this state is not evidence of a death of a person in another state.-S. C. 9 id. 287.

 See Jackson v. Brooks, 8 Wen. 426. S. C. 15 Wen. 111. Stother v. Lucas, 6 Peters, 769. Jackson v. Kip, Anth. N. P. 105. See further, 2 Cowen & Hill’s notes to Phil. Ev. 493, Note, 260.