## HATCHER *v.* ROCHELEAU.

In an action upon a Mississippi judgment it appeared from a transcript of the record, attested by the "clerk of the Circuit Court in and for the county of Adams," to have been recovered in 1842 in the Circuit Court, held before the presiding judge of the third judicial district. The judge who certified the authenticity of the clerk's attestation, described himself in his certificate, dated in 1857, as the "Presiding Judge of the *first* judicial district of the State of Mississippi, which includes the county of Adams;" *Held,* that such certificate proves itself, and is sufficient *prima facie* evidence of the official character which the person signing it asserted himself to possess, and also that Adams county was within the district over which his jurisdiction extended.

The constitution of Mississippi authorizing the legislature to arrange the counties into judicial districts and to change such arrangement at discretion, it

is to be assumed, in support of the record and certificate, that Adams county was in the third district in 1842, and in the first district in 1857.

Identity of name is *prima facie* evidence that a person sued in this State in 1857 is the same person who was sued by that name in Mississippi in 1841.

The omission of a plea which is stated in the record to have been withdrawn by the defendant before judgment and to have been lost or mislaid, does not affect the validity of the record or judgment.

APPEAL from the Supreme Court. The action was upon a judgment alleged to have been recovered against the defendant in the Circuit Court of Mississippi for the county of Adams. The defendant's answer was equivalent to a plea of *nul tiel record*. The case was tried before the late Mr. Justice DUER and a jury. The principal questions made arose upon the admission in evidence of a record of the Mississippi judgment and its attestation, and as to its effect; that record being the only material evidence in the case. The *placita* was as follows: "State of Mississippi, Adams county. Charles F. Hatcher *v.* Joseph Rocheleau. Pleas, before the Honorable CHARLES C. CAGE, Presiding Judge of the third judicial district of the State of Mississippi, at a Circuit Court, held at the court house in and for the county of Adams, on the 17th day of December, 1841." It then set out a summons, dated February 3, 1841, and a return of "not found;" a declaration on a sealed note, made by the defendant to the plaintiff, for $1,150, payable "in Brandon money, or the current notes of the State of Mississippi at the rate of seventy cents on the dollar;" an alias summons, but which is called in the record a *capias ad respondendum*, dated the fourth Monday of May, 1841; and a return of "executed," dated September 3, 1841, and signed by the sheriff. It then proceeds thus: "The plea filed by the defendant in that case, if any was filed, has been lost, mislaid or withdrawn from the papers, so that it cannot be recorded. And now at this day, to wit: at a circuit court, held at the court house in and for the county of Adams, on the 17th day of December, 1841, being the day and year first herein written, came the said parties by their attorneys; and

the said defendant, by attorney, withdraws his plea, by him herein pleaded, and says nothing further in bar or preclusion of said plaintiff's right of recovery." Final judgment is then stated to be rendered in favor of the plaintiff, against the defendant, for $1,434, "the damages sustained by said plaintiff by reason of the nonperformance of the defendant's promises and assumptions aforesaid." Then there is inserted an execution of *fieri facias*, and a return of *nulla bona*, signed by the sheriff. These writs are stated in the record to be sued out of the office of the clerk of the Circuit Court of Adams county, and they are returnable at the Circuit Court in and for said county. They are tested in the name of C. C. CAGE, "Presiding Judge of the third judicial district" of that state. The declaration is entitled, "in Adams Circuit Court."

The attestation of the clerk and the certificate of the judge are as follows:

"THE STATE OF MISSISSIPPI, *Adams County*.

"I, Samuel Wood, clerk of the Circuit Court in and for the county of Adams, State of Mississippi aforesaid, do hereby certify that the foregoing contain a true and perfect transcript of the papers, proceedings, orders &c., of the record and of the whole judgment record of the case of Charles F. Hatcher *v.* Joseph Rocheleau ; and also the execution thereto annexed, with the indorsements thereon, is a true and perfect copy of the original execution, &c., as the said judgment appears on record and on file in my office in the city of Natchez. Witness my hand and seal at the city of Natchez, this 5th day of August, 1857.

"S. WOOD, *Clerk.*" [L. S.]

"THE STATE OF MISSISSIPPI, *First Judicial Dist. of said State.*

"I, Stanhope Posey, Presiding Judge of the Circuit Court of the first judicial district of said State of Mississippi, and which said district includes the county of Adams, do hereby

Hatcher *v.* Rocheleau.

certify that Samuel Wood, whose genuine signature is annexed to the above certificate, was, at the date thereof, a clerk of the Circuit Court of Adams county aforesaid, that the official acts and doings of said clerk are entitled to full faith and credit, and that the said attestation is in due form of law. Given under my hand and seal, this 5th day of August, 1857.

"STANHOPE POSEY." [L. S.]

The defendant's counsel took sundry exceptions to the reception of the record in evidence, which are sufficiently stated in the following opinions. He also excepted to rulings of the court by which he was prohibited from showing that Brandon money was not worth more than twenty-five cents on a dollar, and from showing that some one else than the plaintiff was to receive the proceeds of the recovery, if the plaintiff should prevail. The judge ultimately instructed the jury to render a verdict for the plaintiff, which they did accordingly, and the defendant excepted. The judgment entered thereon was affirmed at a general term. The defendant appealed.

*John Graham*, for the appellant.

*Nicholas Hill*, for the respondent.

DENIO, J. The most material question is, whether enough appeared upon these papers to show that STANHOPE POSEY, the judge who authenticated, by his certificate, the attestation of the clerk of Adams county to the copy of the record, was authorized to perform that act, the act of congress requiring it to be done by "the judge, chief justice or presiding magistrate, as the case may be." (1 *Story's Laws*, 93.) The judgment was rendered before the Circuit Court held in and for the county of Adams, in Mississippi. In the certificate, the magistrate describes himself as "Presiding Judge of the Circuit Court of the first district of said State

of Mississippi, and which district includes the county of Adams." By looking into the constitution of Mississippi, we find that the legislature is authorized to divide the state into several judicial districts or circuits, and that there is to be a judge of each of these districts, authorized to preside at circuit courts in the several counties therein. The certificate imports that the officer who signs it is the presiding judge of that judicial district, the first, which embraces Adams county. This is, in effect, saying that he is the judge of the Circuit Court of Adams county, and thus (the judgment being rendered in that court) he affirms himself to be the presiding judge of the court which rendered the judgment to which his clerk's attestation refers. It is the same thing as though the Adams Circuit Court had its proper separate judge, and a certificate should be produced purporting to be made by such judge. The precise point of the exception is, that the plaintiff was bound to prove, otherwise than by the certificate, that Adams county was in the first district at the time it was given. We think that, *prima facie*, we are to regard the magistrate as holding the official situation which, by his certificate, he professes to occupy; and his certificate imports, as has been mentioned, that he is the presiding judge of the court before which the judgment was rendered. If it were strictly a foreign judgment which was in question, the law would be different. In such cases, the existence of the court and the official character of the officers must be proved before effect can be given to the judgment. But courts, in this class of cases, recognize without proof the courts and judges of the same common government. (*Kinnersley* v. *Orpe*, 1 *Doug.*, 56; *Clement* v. *Durgins*, 5 *Greenl.*, 9; *Cow. & Hill's Notes*, 628, 1165, 1247, *and cases cited.*) On the trial of an issue, for instance, in any of the courts of this state, proof would not be required to verify the official character in which a county judge, a judge of the Supreme Court, or of this court, had assumed to act in a proceeding given in evidence on such

trial; and we are enjoined by the federal constitution and the act of congress to give the same full faith and credit to the judicial proceedings of any other state. We must assume, then, that STANHOPE POSEY was, at the time his certificate was signed, the magistrate referred to by the act of congress, to whom were entrusted the power and duty of authenticating the form of the clerk's certificate attached to this record.

The further question then arises, whether the paper which is thus proved to be the record of a proceeding in the Circuit Court of Adams county shows a legal judgment of that court between these parties. The difficulty is, that the court at which it was rendered appears, as it is argued, to have been holden before a person who could not legally have been a judge of that court; for, by the *placita*, the Circuit Court of Adams county appears to have been held, when this judgment was rendered, before the presiding judge of the *third* judicial district of the state. We have been obliged, in order to establish the authenticity of the record, to assume that Adams county was in the first district in 1857, when the record was certified. But the record, being the act of a court of general jurisdiction, and setting forth the rendition of a judgment in form, is at least *prima facie* evidence of a legal judgment, and it is for the defendant to show that it was *coram non judice.*

Now, the constitution of Mississippi authorizes the legislature to arrange the several counties of the state into judicial districts and to change such arrangement at its discretion, and it may be that the county referred to was in the third district in 1842, and in the first in 1857. That supposition would render the judgment legal and the evidence of it authentic, and the papers afford the highest kind of testimony, short of an act of the legislature, in support of that supposition. If we affirm that the county was not in the third district in 1842, we contradict a record of a judicial proceeding, to which the same faith and credit are due that are

attributable to a domestic record. If we deny that it was not embraced in the first district in 1857, we refuse effect to a certificate made in precise conformity with an act of congress, passed upon a subject· expressly committed to that body by the constitution. When, therefore, we see that the record and certificate are not necessarily contradictory, and that no evidence has been offered to impeach the actual truthfulness of either, we are to assume a state of the statute law of Mississippi which will render them both valid, *ut res magis valeat quam pereat.*

It is objected that the record is a partial and incomplete transcript of the proceedings, and for that reason should have been rejected. I understand the statement, that the defendant's first plea had been lost or mislaid, to be a part of the record, and not simply a matter certified by the clerk. The plea is said in the record to have been withdrawn by the defendant before judgment was obtained, and it was not therefore further material than as a formal step in the history of the case. It was in the power of the court to permit the judgment to be enrolled without it, and to substitute a statement that it had been lost.

There is no ground for alleging that the record does not show jurisdiction of the defendant's person. It states that the alias summons was returned executed, that is, served and also that the defendant appeared by attorney. This would be sufficient in the record of a court of limited jurisdiction. In a court of general jurisdiction, such as this was, it is unnecessary to prove that the defendant was served with process, or appeared in court, though the defendant is at liberty to controvert those facts.

The identity of name was sufficient, *prima facie,* to show that the defendant in this action was the same person against whom the recovery was had in Mississippi. There was no attempt to show that there were two persons of the name of Joseph Rocheleau. (*Jackson* v. *Goes,* 13 *John.,* 518, *per* SPENCER, J.; *id.* v. *King,* 5 *Cow.,* 237; *id.* v. *Cady,* 9 *id.,* 140.)

Hatcher *v.* Rocheleau.

The other grounds of objection may be answered very shortly. It was not competent for the defendant to show that the judgment was wrong, or for too large an amount. The amount of damages, as well as the right to recover, was *res judicata* in the Mississippi court. Nor was it necessary to show that, by the laws of Mississippi, a judgment was evidence of indebtedness. In the absence of proof to the contrary, we assume that the laws of a sister state are the same as our own. If it be true, as argued, that there is a statute in that state denying to a judgment any effect, as proof of a debt, after a certain lapse of time, the defendant should have proved it at the trial. The inquiry whether the plaintiff was to receive the avails of the recovery, if one should be had, was clearly irrelevant. The judgment must be affirmed.

STRONG, J. The act of congress of May 26th, 1790, providing for the authentication of records and judicial proceedings of the courts of any state, to be used as evidence in another state, requires the attestation of the clerk and the seal of the court, together with a certificate of the presiding magistrate that the attestation is in due form. The form of the attestation of the clerk is not otherwise prescribed, and hence it must necessarily be the form which prevails in the state where the records and proceedings exist and are preserved. That form only, in the absence of any other provision by congress on the subject, can be recognized and certified by the presiding magistrate as the due form of attestation. In the present case, the attestation of the clerk to the certified copy of the record received in evidence is certified by the presiding magistrate to be in due form; it is, therefore, in strict and full compliance with the act referred to, and it must be deemed and taken to be sufficient. The certificate is conclusive that the attestation is in proper form for the purpose of the admissibility of the copy of the record in evidence. It is made by the act of

congress the only evidence on that subject. (1 *Greenl. Ev* , § 506; *Drummond* v. *Magruder*, 9 *Cranch*, 122; *Craig* v. *Brown*, 1 *Pet. C. C. R.*, 352; *Smith* v. *Blagge*, 1 *John. Cas.*, 238; *Ferguson* v. *Harwood*, 7 *Cranch*, 408; *Edmiston* v. *Schwartz*, 13 *S. & R.*, 135; 2 *Cow. & Hill's Notes*, 860, 861, 1130, 1132, 1133, *and cases there cited.*)

The certificate of the presiding magistrate, like the seals of courts and other public seals, proves itself. No proof of the signature is required; it is assumed to be genuine, without any external evidence of its authenticity. Nor is any evidence, beyond the certificate, of the official character of the magistrate necessary. The statement of the fact, in the certificate, of subscribing the certificate in that character, is received as sufficient proof of it. And all matters properly certified are deemed to be true as certified. All this results from the declaration of the act of congress, "that the records and judicial proceedings of the courts of any state shall be proved or admitted in any other court within the United States" by being authenticated as aforesaid. It is not contemplated by the act that any proof should be necessary beyond the production of the copy thus apparently authenticated. (*United States* v. *Amedy*, 11 *Wheat.*, 392; *Thomas* v. *Tanner*, 6 *Monr. R.*, 52, 53, 54; *Kirkland* v. *Smith*, 2 *Mart. Louis R.*, 497, 498; *Stephenson* v. *Bannister*, 3 *Bibb*, 369, 370; 2 *Cow. & Hill's Notes*, 1131.) I refer only to the effect of the certificate as *prima facie* evidence; how far or when this evidence may be rebutted and overcome, it is not necessary now to consider.

On the same principle upon which the official character is proved by the certificate, the district or territory over which the office extends is proved in the same manner. The latter is an element of the fact that the magistrate is the presiding magistrate of the court before which the judgment was rendered or proceedings had. If the certificate in the present case had merely stated, in regard to official character, that the judge was the presiding judge of the

Circuit Court in and for the county of Adams, as the court rendering the judgment is described in the attestation of the clerk, no question would have been made as to its suffi ciency; but that is all he has stated in substance. The diffi culty has `arisen from his stating the fact in a circuitous, indirect manner, instead of directly. ( *Elliott* v. *McClelland,* 17 *Ala.,* 206; *Lessee, &c.,* v. *Selin,* 4 *Wash. C. C. R.,* 718; *Thomas* v. *Tanner,* 6 *Mon. R.,* 53, 54.)

The court mentioned in the record was, *prima facie,* one of general jurisdiction; that is the fair inference from the record, in the absence of all other proof (2 *Cow. & Hill's Notes,* 900, 903; 1 *Pet. C. C. R.,* 74); and the presumption is, as in the case of all judgments rendered by such courts, that the court acquired jurisdiction of the person. (2 *Cow. & Hill's Notes,* 905, 906; *Moulin* v. *Trenton, &c.,* 4 *Zab. R.,* 222.) But it appears by the record that the command to the sheriff to summon the defendant was "executed;" and further, that the defendant appeared in the action by an attorney, and, withdrawing his plea, allowed judgment to go against him by default. The statement of either of those facts would be sufficient evidence, in the first in- ·stance, that the person of the defendant was subject to the jurisdiction of the court. (2 *Cow. & Hill's Notes,* 909.)

The copy of the record contains a statement that the plea filed, if any, has been lost or mislaid, or withdrawn, so that it could not be recorded. This appears to have been a part of the record, and not a memorandum of the clerk in preparing the copy, as is supposed by the counsel for the appellant. It purports to have been inserted when the record was made up. The omission of the plea was mere matter of practice of the court whose judgment is recorded, and does not in any way affect, collaterally, the validity of the record or judgment.

The judgment must be assumed to have been legally recovered, and there was no necessity for giving in evidence the laws under which it was rendered. The court having

jurisdiction of the subject matter and the person, the record is conclusive evidence of the merits of the action. No evidence to impeach the judgment on the merits was receivable ( *Shumway* v. *Stillman*, 6 *Wend.*, 447 ; 4 *Cow.*, 292 ; *Spencer* v. *Brockway*, 1 *Ohio*, 260. )

It was *prima facie* evidence ( and sufficient, no suspicious circumstances appearing ), that the defendant is the person against whom the judgment was rendered, that he has the same name ; and the judge at the trial properly assumed that fact. There was nothing to submit to the jury. (*Jackson* v. *Cody*, 9 *Cow.*, 140, *and cases cited ; 2 Cow. & Hill's Notes*, 1301. )

No error was committed in respect to the evidence.

My conclusion is, that the judgment should be affirmed

PRATT, J., dissented ; COMSTOCK and SELDEN, Js., did not take part in the decision.

Judgment affirmed.