NANCY TREBILCOX, RESPONDENT, v. EZRA McALPINE, AS SOLE EXECUTOR, ETC., OF REBECCA BENEDICT, DECEASED, APPELLANT.

*Exemplified copies of judgments entered in other States — a prothonotary of the court of Common Pleas of Pennsylvania will be presumed to be the chief clerk of that court — a judgment entered in that State without any notice given to or the appearance by the defendant will not be presumed to be there valid.*

Upon a hearing had before a referee, appointed to pass upon a disputed claim presented by the plaintiff against the estate of the defendant's testatrix, the plaintiff put in evidence an exemplified copy of the record of a judgment against the testatrix and another person, entered at a term of the Common Pleas Court of Bradford county, Pennsylvania, in favor of the plaintiff's assignor.    The record showed that the judgment was recovered on a written instrument, of which the following is a copy: " $300.00.    Sheshequim, August 31, 1880.    Five years from date, for value received, I promise to pay Joseph Trebilcox, or bearer, the sum of $300, with interest, and without defalcation,    *   *   *   and I hereby authorize the prothonotary, or any attorney of any court of record in Pennsylvania, or elsewhere, to confess judgment against ——— for the above sum, interest and costs of entering judgment on this note, as witness hand and seal." This instrument was signed by the defendant's testatrix and another person.

The record further showed that this instrument was filed among the records of the court, September 27, 1880, and that at the December term, 1880, judgment was entered upon the docket, in favor of the payee against the two makers, for $300, with interest from August 31, 1880, costs one dollar and twenty-five cents, upon this instrument.    The copy of the judgment offered and received in evidence was properly authenticated, as required by section 905 of the United States Revised Statutes, and was attested and certified by the prothonotary of the Court of Common Pleas for the county of Bradford, his certificate being followed by the certificate of the president of the said court that he was the prothonotary of the said court, duly commissioned and qualified, to all whose acts as such full faith and credit was and ought to be given, and that the attestation was in due form.

*Held*, that the court had the right to presume that the prothonotary was the chief clerk of the court in question, and was, therefore, the proper person, under the United States Statutes, to make the attestation in question.

It was conceded that the judgment was recovered and entered without the personal appearance in court of the defendant's testatrix, and without evidence of any summons or other paper having been served upon her, or the commencement of any action against her, simply by virtue of the authority contained in the instrument itself.

*Held*, that the court could not, in the absence of proof as to the statute law of Pennsylvania, say or presume that any faith or credit whatever would be given by law or usage to such a judgment in the courts of that State.    (LANDON, J., dissenting.)

That a nonsuit should have been granted by the referee.

APPEAL from a judgment entered in Rensselaer county upon an order confirming the report of a referee, appointed to try and determine a contested claim against an estate.

The claim was for the amount of a judgment, against the deceased in his lifetime, entered at a term of the Common Pleas Court of Bradford county, Pennsylvania, in favor of Joseph Trebilcox, and transferred to, and held by respondent. An exemplified copy of the record of the judgment was put in evidence, which showed that the judgment was recovered upon a note, so-called, of which the following is a copy :

" $300.00. SHESHEQUIM, *August* 31, 1880.

" Five years from date, for value received, I promise to pay Joseph Trebilcox, or bearer, the sum of $300, with interest, and without defalcation, waiving stay of execution, right of appeal, errors, inquisition and all exemption laws prior to this date, and I hereby authorize the prothonotary or any attorney of any court of record in Pennsylvania, or elsewhere, to confess judgment against —————— for the above sum, interest and costs of entering judgment on this note, as witness hand and seal."

" ABIGAIL VAN DEUSEN.
"REBECCA BENEDICT."

And the record further shows that this note was filed among the records of the court September 27, 1880, and at the December term, 1880, judgment was entered upon the docket in favor of Joseph Trebilcox against Rebecca Benedict and Abigail Van Deusen, for $300, with interest from August 31, 1880, costs one dollar and twenty-five cents upon this note (so-called).

Evidence was given of the transfer of the judgment to plaintiff, and no question appears to be made as to the transfer. The judgment seems to have been entered by virtue of the authority contained in the note (so-called) itself, and without any appearance by deceased, or the service of a summons or any other paper upon her, or the commencement of any action against her. No proof by record or otherwise was given by plaintiff, of such appearance, service, or action, and the offers by defendant to prove there was no such appearance, service or action, were objected to and excluded, as immaterial. There was no evidence before the Appellate

Court, that, as a matter of fact, there was any such appearance, service or action, prior to the entry of the judgment. Various objections to the record, and the certification of the copy thereof were made by defendants, and a motion for nonsuit was made on various grounds. There was no evidence given on either side as to the laws of Pennsylvania. The referee reported in favor of plaintiff, the report was affirmed at Special Term, and judgment was entered from which this appeal is taken.

*Gardenier & Harder*, for the appellant.

*Newkirk & Chace*, for the respondent.

WILLIAMS, J. :

Sections 952 and 953 of the Code of Civil Procedure relate only to the authentication of copies of records, etc. of courts of foreign countries. The Code contains no provision as to the records of courts of other States in this country. Provisions for these are contained in the Constitution and statutes of the United States. Section 1 of article 4 of the Constitution of the United States provides : "Full faith and credit shall be given in each State to the public acts, records and judicial proceedings of every other State, and congress may by general laws prescribe the manner in which such acts, records and proceedings shall be proved and the effect thereof." And in section 905 of the United States Statutes it is provided : "The records and judicial proceedings of the courts of any State or territory of any such country, shall be proved or admitted in any other court within the United States, by the attestation of the clerk and the seal of the court annexed, if there be a seal, together with a certificate of the judge, chief justice or presiding magistrate, that the attestation is in due form. And the said records and judicial proceedings, so authenticated shall have such faith and credit given to them in every court within the United States, as they have by law or usage in the courts of the State from which they are taken."

The copy of the judgment offered and received in evidence was properly authenticated under this statute, and the judgment was thereby proved, and was entitled to have the effect prescribed therefor by the statute, provided the attestation by a prothonotary can be regarded as that of the clerk, within the meaning of the

TREBILCOX *v.* McALPINE.

statute. It does not appear, except from the papers themselves, what the office of prothonotary in Pennsylvania is. The certificate by the president judge states that the person who makes the attestation is prothonotary of the Court of Common Pleas duly commissioned and qualified, to all whose acts as such full faith and credit are and ought to be given, and that the attestation is in due form. Very likely it is true that what is meant in the statute by the word clerk is termed in and by the law of Pennsylvania a prothonotary. The question is whether the courts of this State have the right to assume this without proof of the statute of Pennsylvania. A prothonotary is defined by Webster as, among other things, a chief clerk or register of a court in some of the United States.

It was held in *Morris* v. *Patchin* (24 N. Y., 394) that the attestation by a *deputy* clerk was insufficient under this statute, Judge ALLEN saying: "In making the certificate which is made evidence under the Act of Congress, the clerk derives his authority from the Federal and not from State laws, and the certificate has vitality and effect, not by reason of the official character of the officer making it under the laws of the State, but in virtue of the act of Congress prescribing it as the mode of proof in this particular case. The certificate of the judge is as to the form of the attestation. \* \* \* He is not authorized to certify that the certificate of any other person is of equal validity with that of the clerk in the State where made. The form of the attestation is one thing, the person by whom it is made quite another; the certificate of the judge determines the sufficiency of the former, the statute alone declares the latter." So that the question here is not whether the prothonotary in Pennsylvania has the same power under the laws of that State as a clerk, but whether he *is* the clerk, and the *only* clerk the court has. We incline to the opinion the court has the right to presume the prothonotary is the chief clerk of the court in question, and is, therefore, the proper person under the United States statute to make the attestation in question.

We are left then to inquire what effect is to be given to the judgment in question in the courts of this State. It will be observed the statute requires such full faith and credit to be given to such judgments as they have by law or usage in the courts of the State from which they are taken. We have in this case no evidence as to

the statute law or the usage of the State of Pennsylvania, and we cannot assume the statute law is the same as that of our own State, nor can we assume what such statute law and usage are. (*Leonard* v. *Columbia Ins. Co.*, 84 N. Y., 48; *Keller* v. *Paine*, 34 Hun, 167.) We may very likely assume the law, other than statute law, is the same in Pennsylvania as in our own State. (*Hatcher* v. *Rocheleau*, 18 N. Y., 86.) We may assume, therefore, that this judgment had no binding effect in the State of Pennsylvania, unless the court which rendered it had jurisdiction of the subject-matter and the person of the defendant, and unless it was free from fraud. Indeed it is well settled aside from this presumption, that a judgment of a sister State may always be attacked for want of jurisdiction or for fraud. (*Kerr* v. *Kerr*, 41 N. Y., 272; *Kinnier* v. *Kinnier*, 45 N. Y., 536; *Hunt* v. *Hunt*, 72 id., 217.)

On the trial the defendant sought to attack the judgment against the testatrix, on the ground that the note (so-called) was without consideration. There was no offer to show that it was not signed by her, or in terms that it was procured to be signed by her by fraud. There was objection made that the testatrix was not identified as the same person who signed the note (so-called). There was identity of *name*, however, from which identity of person appears *prima facie*. (*Hatcher* v. *Rocheleau*, 18 N. Y., 86.) And besides this, plaintiff, on cross-examination by defendant's counsel, testified that her husband gave her the judgment two months after he and she were in Pennsylvania at the house of Mrs. Van Deusen, where the note was given; that Rebecca Benedict was there, and her son worked the place. This examination related to the testatrix and the note and judgment in question, and the fair inference is that witness was present at the house of one of the makers of the note when the note was given, and that the testatrix was there also, her son at the time working the farm of the other maker of the note. The defendant's counsel then asked plaintiff what was said at the time the note was given. This plaintiff objected to as immaterial and improper, as going back of the record of judgment on which the action was brought, and that judgment was conclusive between the parties and could not be impeached collaterally except for want of jurisdiction. The referee sustained these objections, but at once reconsidered the

ruling and decided that he would permit defendant to show by the witness that the court in Pennsylvania had not jurisdiction, or that the judgment of that court was fraudulently obtained. The defendant's counsel excepted to these rulings, but asked no further questions; nor did he offer to show in express terms there was any fraud in procuring the testatrix to sign or deliver the note in question (so-called). Defendant's counsel now insists if plaintiff had been allowed to answer the question asked, proof would have been given of fraud in procuring the note to be given. It does not seem to us the question was fairly raised, or that it can fairly be said the referee refused to permit proof of fraud in procuring the note to be given. The judgment was recovered and entered concededly without the personal appearance in court of the testatrix, and without the service of any summons or other paper upon her, or the commencement of any action against her. It was recovered and entered by virtue of the authority contained in the note (so-called) itself. It is objected that it thus appears no jurisdiction was obtained by the court of the person of the testatrix.

The general rule is that a person must have notice or must appear in order to give the court jurisdiction of the person, and to authorize the recovery and entry of judgment. Very likely there may be a statute in the State of Pennsylvania authorizing the recovery and entry of a judgment upon such a note as the one in question without appearance or notice to the makers, without any proof by acknowledgment or otherwise that the note was ever executed by the persons whose names appear signed thereto as makers. But we have no proof that such a statute exists, and we cannot presume it in the absence of proof. Such a judgment could not be recovered or entered in the courts of this State under our statute; and even if we are to presume the laws of Pennsylvania were the same as our own, we should be compelled to hold that there was no jurisdiction obtained, and that the judgment was void. The manner of recovering the judgment seems to have been by merely filing the note; and no proof being made or given as to its execution, a judgment was entered as a matter of course. We cannot say or presume, in the absence of proof of the statute law of Pennsylvania, that any faith or credit whatever would be given by law or usage to such a judgment in the courts of Pennsylvania. We think there was no

evidence given upon the trial authorizing a judgment for the plaintiff, and a non-suit should have been granted by the referee.

The judgment should be reversed and a new trial ordered before another referee, costs to abide the event.

LEARNED, P. J., concurred.

LANDON, J. (dissenting):

I concur with my brother Williams, except upon the question of the jurisdiction of the Court of Common Pleas of Bradford county, Pennsylvania.

The record of that court recites the note itself. The note, in addition to its promise of payment, purports to give to the prothonotary of the court a power of attorney to confess judgment against the makers. The note was made in Pennsylvania. We can see from the record that the court adjudged from the language of the note itself and from the State in which it was made, and from its presentation and filing on behalf of the plaintiff with the prothonotary of the court, that the makers of the note thereby admitted the jurisdiction of the court, of their persons and of the subject-matter.

We cannot say that there was no evidence tending to show jurisdiction. If there was the slightest evidence tending to show jurisdiction, the adjudication of the court that it had jurisdiction is final. It could only be challenged as error, and error must be reviewed on appeal. It is of no consequence that we would hold in our courts, that the evidence there submitted was too weak, or too loosely verified to justify an adjudication of jurisdiction of the persons of the makers of the note. Because there was some evidence tending to show such jurisdiction the decision of the Pennsylvania court that it had jurisdiction is binding upon us. I advise an affirmance.

Judgment reversed, new trial granted, referee discharged, costs to abide final order of court.