GEORGE A. CAMP, Appellant, *vs.* ROBERT SMITH, Respondent.

The "right secured" by a pre-emtor under Sec. 12 of Act of Congress of Sept. 4, 1841, is but the right of pre-emption; that is, the right which a person who has complied with certain requirements of the law has to purchase a portion of the public lands, at the minimum price, to the exclusion of all others. It is a creature of the statute, and is exercised and exhausted as soon as the purchase and entry are made.

After the entry, the rights belonging to the pre-emptor as to the land are those acquired by reason of his having purchased a portion of the public land, and are not different from the rights of other purchasers. They depend wholly upon the fact of purchase, and not of pre-emption. The patent, when issued, has relation back to the time of the entry; and the purchaser's right to the patent, as the evidence of his title, is immediate upon the entry.

The prohibition contained in the 12th Section of the Act above referred to, is intended only to prevent the transfer of the mere right of pre-emption prior to the time of the entry, and the assignment of the certificate of purchase in such manner as to enable the assignee to secure the patent in his own name.

The right to assign the land, or his interest therein, according to the laws of the State, is complete in the pre-emptor from the time of his purchase and entry; and when the patent issues, it enures to the benefit of his grantee. The State alone has the power to regulate the force and effect of contracts, relating to lands within its limits, between its citizens and those seeking the aid of its Courts, and is alone competent to prescribe what shall be deemed evidence of the title to such lands.

This was an Appeal from a judgment in the District Court of Hennepin County.

The questions raised by the demurrer to the complaint appear in the Opinion.

The case was one of much importance, as upon its decision depended the validity of the titles of a large proportion of the City of Minneapolis, and of other titles in the State.

The following are the points and authorities relied upon by the Appellant:

AS TO CONVEYANCES BEFORE ISSUANCE OF PATENT.

*First.* In all cases the title to the public lands of the United States, remains in the United States until the issuance of the patent; and until the issuance of the patent for any tract of lands, the title to which was in the United States, that tract cannot become subject to State or Territorial legislation, except in regard to actions against trespassers upon said land, prosecuted in the Courts of said State or Territory. Vide *Wilcox vs. Jackson*, 13 *Peters, p.* 498, *and Bagnall vs. Broderick*, 13, *Peters*, 436.

*Second.* All pre-emptions made in this Territory are allowed and made under and by virtue of the provisions of the act of Congress, entitled "Act to appropriate the proceeds of the sales of the public lands, and to grant pre-emption rights," passed September 4th 1841, or under acts amendatory thereof, or supplementary thereto, or extending its provisions to lands to which, at the time of its passage, it did not apply.

The 12th section of that act recites among other things, "that all transfers and assignments of the right hereby secured, prior to the issuing of the patent, shall be null and void" and the same provision was inserted and embodied in the act of Congress of the 29th of May, 1830. *Vide U. S. Statutes at large, Vol 4, p.* 421 *and Vol.* 5, *page* 456.

The title of the Plaintiff to this land, rests upon a deed from Anson Northrup and wife to Isaac Atwater, dated April 28th, 1855, the same day on which Anson Northrup entered the said land as an actual settler, by virtue of his right of pre-emption. This conveyance was actually void by Statute, as before referred to; and that conveyances so made are absolutely void, has been often decided by the highest judicial authority in the country. It is further alleged that Northrup and wife made a deed of confirmation, dated October 26th, 1855. "A conveyance of land by a pre-emptor, before the issuance of a patent therefor to him, is prohibited by the laws of the United States; and, if made, is absolutely void." *Vide Glenn vs. Thistle*, 23 *Miss. and* 1 *Cushman*, 42.

"The act of Congress, May 29, 1830, granting pre-emption rights to settlers, makes void all transfers of such rights before the issuance of the patent: therefore such ºassignment cannot be given in evidence, in an action to try title, brought by the patentee." *Vide Cundiff vs. Ormes, 7 Porter, page* 58.

" By the act of Congress of 1812, and the several acts subsequently passed relating to Military Bounty Lands, the grantees entitled to such lands are prohibited from assigning or transferring any claim thereto, until after the issuing the patent therefor."

" Any assignment of the certificate of location is prohibited until the issuing of the patent; and if priorly made, will be disregarded, and ot no effect to the assignee, or to the person to whom it may have been assigned as conferring any title, or creating any rights."

" When the party entitled to a patent before its issue, conveys the lands to another, no title is acquired, and any subsequent conveyance by his grantee, or any subsequent grantee, to a subsequent purchaser, will convey no title to either." *Vide Nichols vs. Nichols, 3 Chandler Wis. Rep. p.* 189.

"Under the act of Congress of 1830, granting pre-emption of land to settlers, but inhibiting all assignments and transfers of the pre-emption right prior to the issuance of the patent, a power given by a settler to convey land entered under that act, as soon as the patent should issue, is void, and consequently any conveyance under it is void." *Vide McElyza vs. Hayter, 2d Porter*, 148.

The act of Congress of 1841, granting pre-emption rights declares, " all assignments and transfers of the right hereby secured, prior to the issuing of the patent, shall be null and void." *Held*, That this clause did not apply to a sale and transfer of a mere settlement and the improvements by a settler, who had not complied with the conditions of the act, and obtained a certificate from the Land Office; but only to rights secured by the act, and evidenced by the certificate." *Vide Taylor vs. Baker, 1st Branch, p.* 245. *See also Hilliard, Real Prop. Vol. 2. p.* 236. *See also Doe vs. Hayes, Rawle on Covenants of Title*, 74, *Note* 1. *Also, 1st Carter, Ind. Rep.* 248. 1 *Smith, Ind. Sup. Court*, 177 ; *1st Scammon*, 244; *Jones vs.*

*Inge*, 5; *Port.* 327; *Carr vs. Allison*, 5 *Blushford*, 63; *Wilkerson vs. Mayfield*, 27 *Miss.* 542; 13 *U. S. Dig.* 366; *Syllabus of Wilkerson vs. Mayfield.*

By the act of Congress of 1841, persons obtaining rights to land as pre-emptors under its provisions, are prohibited from assigning such rights before a patent has been issued: and such assignments are declared to be null and void. Hence the assignee of an assignee acquires no title.

THE CASE OF PHELPS VS. KELLOGG. 15 *Ill. R.* 131.

In this case the land was pre-empted by John L. Bogardus, under the act of Congress of April 5th, 1832. This act authorizes pre-emptions by actual settlers to enter land at the minimum price, to the extent of half a quarter of section and no more.

The act contains no prohibition of the sale and transfer or assignment of the right before the issue of the patent. Besides, by the act of the 23d of January, 1832, entitled "An act supplementary to an act to grant pre-emption rights to settlers on the public land," the inhibitory clause in the act of May 29, 1830, was repealed, and settlers were authorized " to assign and transfer the certificate of purchase or final receipts, before the issuance of the patent."

The sale and transfer under which the Plaintiffs claimed, was made on the 13th day of July, 1852, in which deed the pre-emptor Bogardus covenanted expressly, that if at any time thereafter he should acquire any additional or further title to the said land, the same should enure to the benefit of the grantees.

As this deed was not prohibited by any law, the Court decided that although Bogardus had no legal title to the land at the time of the execution of the deed, the land nevertheless passed to his grantees, by way of estoppel, as soon as he obtained his title by patent, in virtue of the covenants in the deed. Bogardus' deed was not void, and the covenants were doubtless sufficient to pass the title to the land by way of estoppel. *Mawks vs. Dixon*, 20 *Howard, Sup. Court U. S.* 501–6.

AS TO CONFIRMATION.

The doctrine of confirmation, and the principles controlling

and regulating the confirmation of deeds of conveyance, is laid down and established by the highest legal authority thus:

"There can be no confirmation of an act which is void. *Confirmatio est nulla ubi donum præcedens est invalidum.* A confirmation makes a voidable or defeasible estate good, but it cannot work upon an estate that is void in law.

"Confirmation is a conveyance of an estate or right *in esse*, whereby a voidable estate is made sure and unavoidable, where a particular estate is increased. *Vide Coke upon Littleton, Lib. III. Cap. 9, Sec. 515.*

Hilliard, in his excellent work on "Real Property," quotes and repeats the same authority (vol. 2, p. 319, sec. 69), and he further says: "A confirmation cannot strengthen a void estate. Thus, when a deed was void from uncertainty, not being duly located upon the land, a later one, confirming it and describing the land by metes and bounds, is no confirmation."

"Even a deed of confirmation which was executed to cure this defect in the title, was unavailing, because, to use the language of one of the Judges, 'the act to be confirmed was void.'" *Vide Walker vs. Turner, 5th Condensed Reports U. S., p.* 674.

"In the case before the Court, the defect in the defendant's chain of title is, the want of authority in the sheriff to convey to Sappington, which rendered his deed absolutely void." The case last referred to by Mr. Justice Washington, in his decision above, was *Harris vs. Holmes*, decided in the Court of Appeals in the State of Tennessee.

THE DOCTRINE OF ESTOPPEL NOT APPLICABLE IN THIS CASE.

If the rule of estoppel could be applied to cases of this kind, the prohibitory clause in the 12th section of the Act of Congress of the 4th of September, 1841, and the like clause in the Act of the 29th of May, 1830, would be of no force whatever, and would in effect become mere nullities. Because, the title of the pre-emptor, as soon he gets his patent, would, if the doctrine of estoppel *is* applicable, inure to the benefit of every grantee or purchaser before the issuance of the patent. This would defeat both the letter and intent of the law. If the doctrine of estoppel is applicable in this case,

then the instant the patent was issued to Anson Northrup, the title passed to Isaac Atwater; and Northrup, without any further deed, was absolutely and totally divested of his interest in the land.

The doctrine of estoppel is founded upon the covenants in a deed, the rule being that the grantor is estopped from denying his covenants; so, where there are no covenants—as in a deed of quit-claim—there can be no estoppel.

"It is held that when a conveyance itself is *void*, the covenants contained in it are void also." *Vide* 2d *Hilliard on Real Property*, *p.* 419.

"When a lease is void, all the covenants are void, and there can be no estoppel. *Vide case of Frontin vs. Small*, *Lord Raymond's Reports*, *p.* 1419.

"Conveyances of land held under the Act of Congress, May 29, 1830, granting pre-emption rights, are utterly void, and the covenants therein do not act by way of estoppel. *Vide Stevens vs. Hays*, 1st *Carter* (*Ind.*) *Rep.*, *p.* 247.

The case of *Fantitte vs. Gilbert*, 2 *Dunn & East*, 169, is in point. Where trustees had no power to mortgage toll-houses and turnpike gates, the mortgagors could not acquire title by estoppel.

### PROPOSITIONS ESTABLISHED.

*First.* The deed of ths 25th April, 1855, from Anson Northrup and wife to Isaac Atwater, was an absolute nullity; likewise, the subsequent conveyances from Isaac Atwater and wife, of date prior to the 26th October, 1855, were absolute nullities, and therefore conveyed no title to Atwater's grantees, said conveyances being contrary to law.

*Second.* The conveyances from Isaac Atwater and wife, of date subsequent to the 28th April 1855, and prior to the 26th October,1855, being absolutely void, the conveyance from Anson Northrup and wife, of date 7th November, 1855, did not *eo instanti* vest in the said grantees of Isaac Atwater and wife any estate of any kind or nature.

*Third.* The deed from Isaac Atwater and wife to R. P. Russel and others, prior to the issuance of the patent, being void by statute, they could, subsequently, by way of estoppel,

receive no title from Isaac Atwater, when he (the said Atwater) became seized by virtue of the deed from Northrup and wife, of date the 26th October, 1855; and, as the deeds from Isaac Atwater and wife to R. P. Russell and others were all void, so likewise were the covenants therein contained, and no estoppel can arise upon void covenants.

The following are the points and authorities of counsel for Respondent:

*First.* Anson Northrup having made proof of his settlement and improvements as a pre-emptor of lot No. 10, Sec. 23, T. 29, R. 24, to the satisfaction of the Register and Receiver of the U. S. Land District of which that tract was a part, his right of pre-emption under the provisions of the Act of September, 1841, was perfected, and being so when on the 28th day of April, A. D. 1855, he took the oath prescribed by that Act, paid the purchase money to the Receiver and secured a duplicate certificate of entry and purchase of lot No. 10, *Eo instanti,* the title passed and became vested in him. *Laws of U. S.; Act of Sept.* 4, 1841; *Session Laws of* 1858, *p.* 290; *R. S.,* 483, *Sec.* 88; *June* 19, 1834, *Vol.* 4–678; *June* 22, 1838, *Vol.* 5–251; *June* 1, 1840, *Vol.* 5 *p.* 382; *Sept.* 4. 1841, *Vol.* 5, 455; *Aug.* 26, 1842, *id.* 1853–4.

*Second.* The time at which the United States becomes divested of its title to lands sold to pre-emptors under the provisions of the Act of September 4, 1841, is not determined by the emanation of the patent, but by that act which consummates the purchase and sale, *id. est.,* the payment of the purchase money. *Stoddard vs. Chambers,* 2 *How. U. S.* 284; 15 *Curtis,* 119.

*Third.* The pre-emptor is entitled to his patent the *instant* the sale is consummated by the payment of the purchase money; and being so entitled, the *presumption of law is,* that he received it at that time:—the patent when issued in fact, having relation back to the date of entry; hence, the Statute, in referring to the date of entry, and to the issuance of the patent, refers to them *indifferently,* as indicating the same thing. 9 *How;* 314 *Lyle vs. State of Ark.;* 18 *Curtis* 154.

*Fourth.* Statutes must be so construed as to operate equally

upon all, and the Courts will not place upon them such a construction as will leave to chance or accident the determination of the most important rights of both the Government and the citizen, when they are manifestly capable of another construction, by which those rights are brought, for determination, within the operation of well settled rules of law.

*Fifth.* That the inhibition in section 12 of the Act of Sept. 4, 1841, relates to transfers and assignment of rights existing prior to the entry of the land, and *which are merged and lost in the act of entry,* viz, the right of pre-emption, or preferred right of purchase,—the right which is perfected by the pre-emption claimant, when he makes proof of his settlement and improvement to the satisfaction of the Register and Receiver of the local office. *Dillingham vs. Fisher,* 5 *Wis. R. Amer. Law Reg., Nov.* 1853, *p.* 20; *Allen vs. Parish,* 3 *Ohio R.* 118 to 134.

*Sixth.* The provisions of section 12 are limited, in terms, to a state of things existing prior to the making of any entry; and the inhibition clause applies to the " *assignment and transfer* " of the " *right* " " *secured* " to the claimant under that section.

*Seventh.* Where language is employed by the framers of a Statute which is apt and appropriate to one state of things, and inapt and inappropriate to another, it must be presumed, where there is any authority in the Statute, that that state of things is intended to which the language employed is apt and appropriate.

*Eighth.* Statutes must be so construed that every part shall be operative, and each part consistent with the whole, where the language employed is capable of such construction; hence, so to construe the inhibitory clauses, in section 12 of the Act of Sept. 4, 1841, as to prohibit the sale of lands by a pre-emption *before the date of the actual signing and sealing* of the patent, is to place it in direct conflict with, and cause it to usurp the purpose and office of the following section; leaving uncared for that branch of the subject for which it was the peculiar office of section 12 to provide.

*Ninth.* The moment a pre-emptor has complied with the requirements of the Act of 1841, and paid the purchase money for the land, *his title to the land is perfect,* and the delivery of

Camp v. Smith.

a duplicate certificate of entry and purchase, as well as the patent, are the mere evidences of that title—it being complete without either. *Goodlet vs. Smithson,* 5 *Porter,* 245; 5 *U. S. Dig. p.* 667, *Sec.* 60, 61, 64, 65; 6 *Porter,* 84.

*Tenth.* After the pre-emptor has fully complied with the requirements of the law, granting pre emption rights to settlers upon the public lands, and has paid the purchase money, the title vests in him; and from that moment Congress has no further control over it; and the tenure and alienation of the estate are regulated by and subject only to the laws of the State or Territory within whose territories it is situated. 4 *McLean,* 366; *Morgan vs. Contemeries;* 3 *How. U. S.* 441, *Carroll vs. Michigan.*

*Eleventh.* The sale and conveyance by *warranty deed,* from Anson Northrup and wife, dated April 28, 1855, the date of the entry, to Isaac Atwater, his heirs and assigns, vested in the vendee a fee simple estate.

*Twelfth.* The sale from Atwater and wife to his vendees, by *warranty deed,* passed to them an estate in fee simple.

*Thirteenth.* That whatever title or estate passed to Isaac Atwater by the deed from Northrup and wife, dated November 13th, 1855, after the actual issuance of the patent *by virtue of the covenants of warranty* in the former deed of conveyance from Atwater and wife to their vendees, enured to the benefit of the latter by way of estoppel. *Somes vs. Skinner,* 3 *Pick,* 51, 58; *White vs. Patten,* 24 *Pick;* 324; 2 *Smith's 5th Amer. Edition from last English* 625; *Duchess of Kingston's case Allen vs. Parish,* 3 *Ohio R.* 118 to 134.

*Fourteenth.* That had the original conveyance from Northrup and wife to Isaac Atwater been void, the covenants of warranty were operative and binding; and in virtue of those covenants whatever estate was subsequently acquired by Northrup, enured to the benefit of Atwater by way of estoppel. *Same authorities quoted to* 13; *Jackson vs. Hubble,* 1 *Cow.* 613; *Somes vs. Skinner,* 3 *Pick.* 52 & 8; *Kellogg vs. Wood,* 4 *Paige* 578; 4 *Kent,* 8 *Ed.* 269; *Jackson vs. Parkhurst,* 9 *Wend,* 269.

*Fifteenth.* That even though Atwater possessed no title to the lands at the date of the conveyances from himself and wife to Smith, Russel, Chase & others, yet whatever estate or inter-

est he subsequently acquired, *eo instanti*, ennured to their bene-
fit by virtue of the covenants of warranty, by way of estoppel.
*Doe vs. Oliver*, 2 *Smith Ld. ca.* 625, 626, *and cases cited.* 4
*Kent*, 8 *Ed.* 269, *and note* (*d*). 1 *Iredell*, 570; *Rawles Cov.
Tit.* 405.

*Sixteenth.* The deed from Northrup and wife to Atwater
of October 26th, 1855, was not a deed of confirmation, but a
perfect deed of quit claim and release and passed all the estate
which Northrup could convey by deed of bargain and sale;
the appropriate *technical* and active words of a deed of confir-
mation are "ratify, approve and confirm." *Stat. Minn. Chap.*
46; *Sec.* 3. *p.* 211; 2 *Hill. Real property*, 319; *Sec.* 70.

*Seventeenth.* Conceding that the Plaintiff is only a tenant
in common of the "*locus in quo*," he is entitled to recover his
individual interest without joining his co-tenants. 10 *Wendell*,
446; 1 *Chitty. Pl.* 76; 4 *Cranch.* 165, 6 *Barb.* 116, *Kellogg
vs. Kellogg*, 2 *Caines*, 169.

J. PARSONS & JNO. B. BRISBIN, Counsel for Appellant.

F. R. E. CORNELL & D. COOPER, Counsel for Respondent.

*By the Court*—L. EMMETT, Ch. J. It appears by the complaint
that on the 28th day of April, A. D. 1855, one Anson Nor-
thrup purchased and entered as a pre-emptor, at the Land Of-
fice at Minneapolis in this State, Lot 10, of Sec. 23, Town 29,
of Range 24, west of the 4th principal meridian, containing
48 10-000 acres; and that afterwards on the 17th day of July,
A. D. 1855, a patent for said lot was duly issued to him. That
on the day of the purchase, but after the entry was perfected,
the said Northrup and his wife, for a valuable consideration,
executed and delivered to Isaac Atwater a deed of general
warranty for the land so entered, and that after the patent had
issued, said Northrup and wife executed and delivered to said
Atwater, another deed, bearing date the 26th day of October,
A. D. 1855, whereby for the consideration therein mentioned,
they, remised, released and quit-claimed to the said Atwater,
his heirs and assigns, all their right, title and interest in and to
said lot. The land has been divided into lots and blocks, and
now forms part of the town of Minneapolis. The Plaintiff

claims title to lot 2 of block 17 of the town of Minneapolis, being a portion of the land so entered, through Atwater and his grantees. The complaint sets forth these facts, with the particulars of the Plaintiff's chain of title,—alleges that the Defendant is unlawfully in the possession of said lot 2, of block 17, "claiming title thereto, or some interest therein, or lien thereupon" and unlawfully withholds possession of the same from the Plaintiff: and demands that the Defendant be adjudged to surrender the possession to the Plaintiff, with damages, &c.

To this complaint the Defendant demurs. The demurrer was over-ruled by the Court, and judgment thereon entered for the Plaintiff, and from this judgment the Defendant appeals to this Court.

The grounds of demurrer as argued in the argument are in substance; that Northrup had no title to the land entered, before the patent issued; that the first deed to Atwater was therefore void; that Atwater having no interest, no estate passed from him to his assignees; and that no estate passed to, or vested in the grantees of Atwater, by virtue of the deed made by Northrup and wife after the issuing of the patent, because the deed was made in confirmation of Atwater's interest or estate which was void in law.

Whether the Deed first made by Northrup is of any validity, depends upon the interpretation, force and effect of the last clause of Sec. 12, of the act of Congress of September 4, 1841. The section reads as follows:

"Sec. 12. *And be it further enacted:* That, prior to any entries being made under and by virtue of the provisions of this act, proof of the setttlement and improvement thereby required shall be made, to the satisfaction of the Register and Receiver of the Land District in which such lands may be, agreeably to such rules as shall be prescribed by the Secretary of the Treasury, who shall each be entitled to receive fifty cents from each applicant for his services to be rendered as aforesaid; *and all assignments and transfers of the right hereby secured prior to the issuing of the patent, shall be null and void.*"

We shall be better able to determine the meaning of the clause in question by referring to the legislation of Congress

on the subjeet of pre-emption rights, prior to the Act of Sept. 4th, 1841. It will not be necessary to go back beyond the Act of May 29, 1830. By the terms of that Act, every settler or occupant of the public lands prior to the passage thereof, who was then in possession, and had cultivated any portion of the land in the year 1829, was authorized to enter at the minimum price any number of acres not exceeding one hundred and sixty, provided said lands were not reserved for the United States or either of the several States. Sec. 3 of this Act is almost identical with Sec. 12 of the Act of Sept. 3, 1841. It is in the words following :

"SEC. 3. *And be it further enacted*, &c. : That, prior to any entries being made under the privileges given by this Act, proof of settlement or improvement shall be made to the satisfaction of the Register and Receiver of the Land District in which such lands may be, agreeably to the rules to be prescribed by the Commissioner of the General Land Office for that purpose, which Register and Receiver shall each be entitled to receive fifty cents for his services therein ;—*and that all assignments and transfers of the right of pre-emption given by this Act prior to the issuance of the patent shall be null and void.*"

It will be observed, that the section just recited makes void all assignments and transfers of " the right of pre-emption given by this Act prior", &c., while the Act of September 4, 1841, vitiates all assignments and transfers of " the right hereby secured." The language in each is the same, in substance and effect, as the other. If there be a difference, it is in the number only of the words used to express the same idea.

The next Act, in order of time, is that of January 23, 1832, which is supplementary to that of May 29, 1830. It consists of the following section only :

" *Be it enacted*," &c. : " That, from and after the passage of this Act, all persons who have purchased under an Act entitled 'An Act to grant Pre-emption Rights to Settlers upon Public Lands,' approved the twenty-ninth of May, one thousand eight hundred and thirty, may assign and transfer their certificates of purchase, or final receipts, and patents may

issue in the name of the Assignee, anything in the Act aforesaid to the contrary notwithstanding."

The Act of May 29, 1830, having expired by limitation, the Act of April 5th, 1832, was passed, which gave to all actual settlers, being housekeepers, upon the public lands, the right to pre-empt eighty acres, including their improvements, within six months from that time ; and also required them, when they made application *to enter*, to file an affidavit that they made the entry in their own names, for their own use and benefit, and not in trust for another, but provided no forfeitures or penalties for perjury in making the affidavit.

The Act of July 14, 1832, seems to have been passed for the benefit of those who were unable to secure their claims under the Act of 1830 in consequence of the surveys not being made or returned, or where the land was not attached to any district, or was reserved from sale on account of disputed boundaries. It has no particular bearing on this case.

The Act of June 19, 1834, revives the Act of May 29, 1830, for two years; gives the benefit thereof to all those in possession who had cultivated the land during the year 1830, and relieves certain settlers who, by a construction given by the Secretary of the Treasury, had been excluded from the benefits of the Act revived.

The Act of June 22, 1832, again revives for two years longer the Act of May 29, 1830, and extends the benefit thereof to every actual settler being the head of a family, or over twenty-one years of age, who was then and for four months next preceding in possession, and a housekeeper by personal evidence thereon. It provides, also, that before any person claiming the benefit of the law shall have *a patent* for the land he claims, he shall make and file with the Register of the Land Office the same oath in substance as that which by the thirteenth section of the Act of September 4, 1841, is required to be made at the time of the *entry*.

The Act of June 1st, 1840, continues in force the Act of June 22, 1838, until the 22d day of June, 1842, and extends the right of pre-emption under its provisions to all settlers at that date, with the exceptions, limitations and conditions specified in this and the Act of 1838.

Before the time limited for the continuance of this Act had expired, Congress passed the Act of September 4, 1841, being the general Pre-emption Law now in force. It seems to have been intended to embrace the substance of all former laws on the subject, and it makes but few alterations. The operation of the present law is not limited as to time; the right of pre-emption is confined to citizens, and those declaring their intention to become such under the provisions of the naturalization laws; an appeal is given, in contested cases, from the decision of the Register and Receiver, to the Secretary of the Interior; and the oath which, by the laws then in force, the pre-emptor was required to take at the time he received the patent, he must now make before he is allowed to enter the land he claims. These, it will be found, are the only material changes made by the Law of September 4, 1841.

What, then, is the "right secured" by the law as it now exists, the assignment and transfer of which is made void by the twelfth section aforesaid? The title of the Act, and the end and object to be attained, as well as the plain meaning of the language used, all show it to be but the right of pre-emption; and that right has obtained a clear, definite and common-sense signification in every part of the United States where public lands are situated. It is, simply, the right which a person who has complied with certain requirements of the law has, to purchase a portion of the public lands at the minimum price to the exclusion of all others. It is wholly a creature of the statute, and is exercised and exhausted as soon as the purchase and entry are made. After the entry, the rights belonging to the pre-emptor as to the land are those acquired by reason of his having purchased a portion of the public land, and are not different from the rights of other purchasers. They depend wholly upon the fact of purchase, and not of pre-emption. True, if convicted of fraud in making or proving up his pre-emption right, or of perjury in the oath required by section thirteen, he may have his purchase annulled, or forfeit the purchase-money, and all the right and title to the land, except in the hands of *bona fide* purchasers for a valuable consideration. But these are punishments visited by law upon fraud and perjury, of which the party must be first duly convicted

in a court of competent jurisdiction, and depend upon the fact of crime alone, and not upon the entry or pre-emption.

It is however contended by the counsel for the Defendant, that it was the intention of Congress not only to prohibit the assignment or transfer of the right of pre-emption strictly so called, but also the sale of the land itself or the interest therein, which the pre-emptor obtained by virtue of his purchase. And the Act of January 23, 1832, which authorizes the transfer by pre-emptors, of their final receipts or certificates of purchase under the Act of May 29, 1830, is referred to, as showing that Congress gave such an interpretation to a similar provision in that Act. We do not think the Act referred to sustains the position assumed. It shows rather that in the opinion of Congress, the inhibition, if it extended to any thing other than the transfer of the mere personal privilege of becoming the exclusive purchaser, was intended only to prevent the pre-emptor from assigning his certificate of purchase, so as to enable the assignee to obtain a patent in his own name; and that this was even too great a restriction upon a purchaser. This is the most that can fairly be inferred from the Act of January 23, 1832, and we are of opinion this legislative interpretation of the Act of May 29, 1830, is correct. This interpretation doubtless resulted from the use of the words, "prior to the issuance of the patent," which are also in the present law. Without these words there would be no difficulty in arriving at the correct meaning of the remainder of the sentence, and no one would ever have supposed that the inhibition extended beyond the time when the land was entered. Purchasers of the public land however, other than pre-emptors, can assign their certificates of purchase, and the patents are issued in the name of the assignee, but by what authority, we have not inquired. Very embarrassing questions frequently arise, as to who among the different claimants to the land or the certificate, is entitled to the patent. These questions are decided at the proper Department, in favor of some one of the claimants, and that too without the power necessary to a full investigation of the facts, and it may be, by some one not distinguished for legal attainments.

The decision however settles nothing definitely. It merely in form divests the United States of the legal title, leaving to

the proper Courts the ultimate settlement of the rights of the respective claimants. Congress had a right to say what force and effect shall be given to these certificates of purchase, by the officers of government, when about to verify the title of the purchase by the issuing of the patent, especially as all legal rights are preserved, and therefore determined that in all entries by pre-emption the patent shall issue to the pre-emptor only. This relieves the Department from all responsibility, and renders the duties of officers in this particular plain and simple.

Had it been intended to prohibit the sale of the land, or the interest acquired by the purchaser, the language used would have been adapted to the object to be accomplished. We find in other instances where it is sought to restrain the transfer of the land, that the language is plain, and admits of but one interpretation. The act entitled " an Act to increase the present Military Establishment of the United States and for other purposes," passed July 5th, 1838, provides in Sec. 29, that certain soldiers shall be entitled to one hundred and sixty acres of land, "which land shall be patented to the soldier or his heirs, and be not assignable until patented. *U. S. Stat. Vol.* 5. *p.* 260. Here the intention to prohibit the transfer of the land is clearly expressed. Again, the "Act entitled an Act to provide for the armed occupation and settlement of the unsettled part of the peninsula of East Florida," passed August 4, 1842, gave to each settler the right to one hundred and sixty acres of land and also provided in Sec. 4, " that all sales, gifts, etc. *of the land* acquired thereby, made at any time before the issuing of the patent should be null and void." *U. S. Stat. Vol.* 5, *p.* 503. Here again we find the term " land " made use of; and for the reason that it is about the only word that would express the idea intended to be conveyed. How natural and appropriate it would have been to have said in the Act of Sept. 4th, 1841, that " all assignments and transfers of the *land* prior to the issuing of the patent shall be null and void," had that been the intention. The same Congress in 1842, in the Act above referred to, used language apt and appropriate to prevent the transfer of the land, and it is but reasonable to presume that the same, or equally clear language would have been employed in the Act

of Sept. 4, 1841, had the same prohibition been intended.

It has been the settled policy of the General Government to encourage the speedy settlement and cultivation of the public lands, and nothing has contributed more to that end than wholesome pre-emption laws.  They are passed as well for the good of the whole community, as the benefit of the individual pre-emptor, and are intended rather to enlarge, than restrict the rights of those who claim the benefit of their provisions. When therefore a pre-emptor has complied with the require- ments of the pre-emption law, he has contributed to the public good.  He has thereby acquired a legal right to the land, and he should not be restricted in its enjoyment.  Nor can he be deprived of this right, except by the judgment of his peers, upon a conviction of fraud or perjury.  His right to enter by pre-emption depended upon the state of facts existing at the time of entry, and is not affected by anything he may do, or omit to do, afterwards.  His rights thenceforth are the same as though he had purchased at public sale or by private entry, except that he cannot transfer his certificate of purchase so as to enable his assignee to secure the patent in his own name. Public policy requires that the purchaser should not be fur- ther restricted.  It is true, the evidence, or verification of his title, has not yet in form been issued, but his right thereto is complete upon the payment of the purchase money.  When the patent does issue, it has relation back to the time of en- try, and is rather the evidence that the title already exists in the purchaser, than the title itself.  There being no time fixed for the issuing of the patent, the purchaser's right thereto is imme- diate upon the entry.  And yet it is delayed at the discretion of the General Land Office for months, and even years.  Shall the right of the purchaser to the full enjoyment of his purchase depend for so long a time, or even for a single day, upon the mere will of a ministerial officer, or upon the number or in- dustry of the clerks assigned to him? what effective remedy has he against the delay becoming perpetual?  The pre-emp- tor has the actual possession, and the right of possession by virtue of the pre-emption law, and the right of property by virtue of his purchase, the three requisites to a perfect title. The terms of his purchase are reduced to writing and signed by

the authorized agent of the Government; and were the contract between individuals and by parol even, there. is such a part performance as would entitle the purchaser to a specific performance in equity, for he is given the possession, has made beneficial improvements, and has paid the purchase money. Why should not the Federal Government when it enters the market as a dealer in lands, and contracts with the citizen, be subjected to the same rules which govern him? There is no good reason at this day for any distinction.

Land in the United States is as much the subject of traffic almost, as merchandize, and that trade is rather encouraged than restricted by law. Half the titles in the new States and Territories would be unsettled if a transfer of the land by a pre-emptor is prohibited, before the issuing of the patent. On grounds of public policy, therefore, such an interpretation should be given to the pre-emption law, as will not interfere with the free transfer of lands in the State; and to that end it should if necessary, be strictly construed, so as not to prohibit the assignment or transfer of anything not specifically and unmistakably designated.

Most of the new States have taken this view of the subject, and have provided by Statute, that the Receiver's certificate of purchase shall be *prima facia* evidence that the title to the land therein mentioned, is in the purchaser, his heirs and assigns. Lands thus situated are taxed and sold for delinquent taxes, and the Supreme Court of the United States has fully recognized this right in the States. This State has gone further and declared that all conveyances, mortgages and contracts of any kind, relating to pre-empted lands, made after the entry, shall be binding upon the parties thereto, after the issuing of the patent, and that the title which shall be vested in the patentee, by the issuing of the patent, shall immediately be vested in the party to whom such patentee may have conveyed the same, or his assigns, to the same extent and under the same rules and regulations as are applicable to other lands and conveyances. *Min. Stat. for* 1858, *p.* 290–1.

We do not regard this as an interference with the primary disposal of the soil, inasmuch as the United States parts with the right to the soil, at the time of the sale and entry. If the

patent—the formal evidence of the pre-emptor's title has not yet been furnished him, the fault is with the United States, not with him. He is entitled to it at once. The action of the authorized agents of the Government amounts to an actual sale, not a mere contract to sell. The parties to that sale are equally bound by its terms. The one is permitted to use, enjoy and dispose of the purchase money, and why should not the other have the same rights as to the land? It is not a gift to the pre-emptor, that Government should presume to prescribe the manner in which he shall enjoy it, as it has assumed to do to a certain extent in the case of bounty lands. He has by complying with the law, paid the consideration for the right to the exclusive purchase, and having purchased, has a right to enjoy the fruits thereof to the fullest extent. Why then, it may again be asked, should his rights differ from those of a purchaser by private entry or public sale?

The States can never concede to Congress the right to prescribe to the actual purchaser of public lands within their limits, the mode, manner or time in which he shall enjoy the land purchased. The Federal Government may regulate the terms on which it will give lands to the citizen, fix the price for which it shall be sold, and give preference to certain purchasers, but when the terms of the gift are complied with, or the purchase money paid, the gift or purchase is complete ; Congress has then exhausted the power over the public lands reserved by the Constitution of the United States, and the sovereignty of the State immediately attaches. As well might Congress entail the public lands, or regulate the law of their descent and alienation in terms, as to prohibit the purchaser from selling until he has received the patent, and then delay the issuing of the patent at pleasure. We do not think that Congress so intended to legislate, and even if the Act of September 4, 1841, had in plain terms prohibited the transfer of the lands instead of the mere right of pre-emption, until after the patent has issued, we are not yet prepared to regard such a prohibition as binding.

The United States has but a proprietary interest in the public lands within the several States ; the sovereignty is in the State. The rights attaching to the interest do not

differ from those of any other landholder in the State, except as provided by the Constitution of the United States and the terms of the compact between the General and State governments at the time the State is admitted into the Union. The Constitution merely asserts the right to dispose of, as proprietor, and to make needful rules and regulations necessary to the exercise of that right. But the right to dispose of does not include the right to limit the enjoyment after sale, nor to prescribe how or when the purchaser shall dispose of his land; and the right to make needful rules and regulations is such only as may be exercised by every proprietor. By the terms of the Compact admitting Minnesota into the Union, the State recognizes the right of proprietorship, and agrees not to interfere with the primary disposal of the public lands, nor to tax them while belonging to the United States; but these concessions do not interfere with the right claimed and exercised by the State as sovereign, to tax and sell for delinquent taxes all lands from the date of the entry at the land office. If, however, the purchaser by pre-emption has no interest which he can himself sell or transfer, he has none which can be taxed or sold for delinquent taxes; and the revenue of the State derived from taxes upon pre-empted lands will depend, to a very great extent, upon the activity and industry of the clerks in the Land Department at Washington—leaving us entirely at the mercy of those over whom we have no control.

We hold, therefore, that the prohibition contained in section twelve of the Act of September 4, 1841, is intended only to prevent the transfer of the mere right of pre-emption prior to the time of the entry, and the assignment of the certificate of purchase in such manner as to enable the assignee to secure the patent in his own name;—that the right to assign the land, or his interest therein, according to the laws of the State, is complete in the pre-emptor from the time of his purchase and entry;—that, when the patent issues, it enures to the benefit of his grantee; and that the State alone has power to regulate the force and effect of contracts relating to lands within its limits, between its citizens and those seeking the aid of its Courts, and is alone competent to prescribe what shall be deemed evidence of title to such lands.

The view which we have taken of the effect of a deed made by a pre-emptor, after the entry and before patent, renders it unnecessary to consider at length the effect of the deed made by Northrup after the patent issued. As, however, our statute declares that " a deed of quit-claim and release, of the form in common use, shall be sufficient to pass all the estate which the grantor could lawfully convey by deed of bargain and sale," we hold that the deed made by Northrup and wife after the patent issued, vested in Atwater a perfect title, which enured to the benefit of his grantees, even although he derived no title by virtue of the deed made by Northrup to him before the issuing of the patent.

The judgment of District Court overruling the demurrer is affirmed.