## WM. R. McKEAN v. CRAWFORD, SWIFLE, ET AL.

1. PREEMPTOR—*Title of.* The inchoate rights of a preemptor of a portion of the public lands, who proves up his claim thereto, and enters the land, ripen into a perfect title to such land instantly on such entry; and he may sell and convey said lands, as an absolute owner thereof, before a patent is issued to him therefor.

2. PREEMPTION LAW—*Construction of §12 of Act of 1841.* The prohibition contained in the twelfth section of the preemption act of 1841, (5 U. S. St. at Large, 456,) was intended to prevent the assignment of the right of preemption, prior to the time of the entry and purchase of the land to which such right appertains, and the transfer of the certificate of purchase, so as to permit the assignee thereof to receive a patent in his own name.

3. —— *Right of Preemption Purchaser to sell.* The right to transfer his land, is complete in the preemptor from the date of his entry and purchase thereof, and the receipt of the usual certificate therefor; and if he exercise such right before a patent has issued to himself, such patent inures to the benefit of his grantee.

*Error from Linn District Court.*

ACTION by plaintiff in error against Geo. A. Crawford, John J. Swifle, Amelia A. Swifle, and Anna R. Massey, as

defendants, to vacate and annul certain deeds of convey-
ance, and compel defendants to convey to plaintiff *Wm.
R. McKean*, as trustee for himself and others, certain
lands in Linn county.   The petition alleges that plaintiff
*McKean*, and nine other persons, in 1857, associated
themselves together and organized the Montgomery
Town Company, and laid out a town on the lands in con-
troversy; that the plaintiff was elected president of said
company; that the defendant *Crawford* was appointed
attorney of and for said company; that defendant *John J.
Swifle* was a preemption claimant of the said lands; that
said *Swifle*, in company with plaintiff *McKean*, and defend-
ant *Crawford*, went to the local land office, on the 26th of
July 1859, proved up his preemption right, and entered
said lands in his own name, receiving from the register
and receiver the usual " duplicate receipt" issued by them
on purchase of government lands; that thereupon, on
the same day, said *Swifle* sold and conveyed said lands to
the plaintiff *McKean*, as President of the Montgomery
Town Company; that said Swifle, as part of his contract
of sale obligated himself to execute to the plaintiff (within
three days thereafter,) another deed of said lands, in
which his wife, the defendant *Amelia A. Swifle*, should
join as grantor; that the defendant *Crawford*, as attorney
for said Town Company, was to obtain such second deed,
and cause the same to be recorded; that plaintiff returned
to Indiana, where he resided; that Crawford and Swifle
returned to Linn county; that no second deed was exe-
cuted, and no conveyance made by said *Amelia*, to the
plaintiff, of her interest in said lands; that on the 11th of
August 1859, defendants *John J. Swifle* and *Amelia*, his
wife, conveyed said lands by deed of warranty to defend-
ant *Anna R. Massey;* that on the 27th of August, 1859,

8

said Anna R. Massey conveyed all of said lands to the defendant *Crawford*, who, on the 24th of January, 1860, reconveyed to said *Anna R. Massey* an undivided half of said lands. The petition charged that all the grantees purchased with full knowledge of the plaintiff's purchase and deed from John J. Swifle, and of all of plaintiff's equities in the premises. All the deeds mentioned were duly recorded.

The answer contained a general denial; alleged that defendants were innocent purchasers for value; and for a further defense, alleged, that defendants Geo. A. Crawford and Anna R. Massey, on the 6th of August, 1859, commenced an action in the Linn District Court, as plaintiffs, against said Wm. R. McKean, and those associated with him as the Montgomery Town Company, as defendants, to set aside and vacate said deed so as aforesaid executed by said John J. Swifle to said McKean, as president, etc., " in which action it was, on the 28th of " September, 1860, duly adjudged and decreed by said " district court, that the said conveyance from said Swifle " to said McKean be set aside and held for naught, and " declared to be absolutely null and void, and of no force " or effect in law—which said judgment and decree " remains in full force and effect." The plaintiff's reply was a general denial.

This action was commenced in November, 1860, and continued from term to term, until March, 1866, when it was referred by consent of parties, " as to all the issues " therein, to NELSON COBB, Referee, for trial; files and " original papers to be transmitted to said referee for that " purpose, and either party may take the deposition of " any witness to be used on the trial, without regard to " his residence, upon the like notice required in other

" cases." The referee made his report to the district court at the November Term 1869. No bill of exceptions was settled before the referee. No part of the testimony is preserved, or returned, and no record of the proceeding or trial, except the statement in the report, that "the cause was continued from time to time from May 25, 1866, until February 12, 1869, when it was submitted upon the evidence and written arguments of counsel." The referee reports the "facts in the cause," in detail, as found by him, whereby it appears that all the averments in the plaintiff's petition were true. (No reference is made to the answer of the defendants, nor to the "judgment and decree" pleaded in said answer.) The referee, as conclusion of law, found as follows:

" And I find, as matter of law, that said deed of John J. Swifle to the plaintiff, *having been executed and delivered before the patent for said land was issued* from the United States to said John J. Swifle, is, for that reason, void; and the plaintiff for that reason cannot recover, and the defendants are entitled to judgment for costs."

The district court overruled plaintiff's•motions to set 'aside the conclusion of law, and for judgment *non obstante*, upon the facts found by the referee, and gave judgment confirming said report, and in favor of the defendants for costs. The plaintiff excepted, and brings the case here on error.

*Wilson Shannon*, for plaintiff in error:

The referee's " conclusion of law," upon the facts of the case, as found by him, was wrong, and the court below erred in overruling the motion to set such finding aside. The reason assigned by the referee, (and followed by the court,) for holding the deed from Swifle to McKean to be void, is not good. The precise question presented by the record in this case is fully and elabo-

rately considered by the court in *Camp. v. Smith*, 2 Minn., 155 to 175. See also *Dillingham v. Fisher*, 5 Wis., 475 to 482; *Morgan v. Curtenius*, 4 McLean, 366.

A party who has preempted land and paid for it, and received the usual certificate of purchase, is the *owner* of the land. *Carroll v. Safford*, 3 Howard, 460; same case, 15 Curtis, 511.

The judgment should be reversed, and a special mandate sent, (§ 559, civil code, 1868,) to the district court, directing it to render such judgment in the premises as it should have rendered on the facts found by the referee.

*Riggs, Nevison & Foote*, for defendants in error:

1. Defendant Amelia A. Swifle was not a party to the contract between plaintiff and her husband; she made no deed to plaintiff, and did not agree to join in any such conveyance. As against her, plaintiff is not entitled to the relief demanded in his petition.

2. There was no error in the refusal to set aside the referee's conclusion of law. Section 12 of act of Sept. 4, 1841, provides that, " all assignments and transfers of the right hereby secured, prior to the issuing of the patent, shall be null and void." And § 13 of the same act requires the preemptor to swear, before being entitled to the benefits of the act, that he has not made any agreement by which the title which he might acquire from the government should inure to the benefit of any person except himself. The object of the law was to prevent any person from preempting land for the benefit of speculators. *Marks v. Dickson*, 20 How., 501.

From the plaintiff's own showing it is clear that there was an understanding between him and Swifle, before

the entry; and that the land was entered for McKean's benefit, and for the purpose of speculation.

The opinion of the court was delivered by

SAFFORD, J.: This was a proceeding in error brought to reverse the judgment of the district court, rendered upon the report of a referee, to whom all of the issues in the case below, both of fact and of law, were submitted for decision. No exceptions were taken to the findings of fact in said report; but to the conclusion of law, as found by the referee, objection was made by the plaintiff, and such objection was heard, upon a motion to set aside the report so far as it related to the said conclusion of law. But the court refused the motion to set aside, and proceeded to render judgment in accordance with the said finding of law by the referee; whereupon the plaintiff duly excepted.

By reference to the facts as found it will, among other things, be seen that John J. Swifle, one of the defendants, here and below, preempted the land which was the subject of the action, on the 26th day of July, 1859; that after he had so preempted the land, and had paid for the same, he received from the proper officers the usual certificate of entry; that thereupon, and upon the same day he executed and delivered to the plaintiff, as president, etc., a deed of the same land, with the usual covenants, and received a valuable consideration therefor. But his wife did not join in said deed. Upon these facts the conclusion of law was based, and was as follows, to-wit: "And I find as matter of law, that said deed of " John J. Swifle to the plaintiff having been executed " and delivered before the patent for said land was issued " from the United States to said John J. Swifle, is, for that

" reason, void; and the plaintiff, for that reason, cannot
" recover, and the defendants are entitled to judgment
" for costs."

Here then, is to be found the all-important, and almost
the only question, which is raised in this case : Was the
deed of John J. Swifle to the plaintiff, void, and for the
reason stated ? The claim or assumption that the deed
was so void is based upon the construction
which was given to the twelfth section of the
preemption act of Sept. 4, 1841, (5 U. S. St.
at Large, 456,) by the referee and the court below. Said
section is as follows :

1. TITLE of pre-
emptor, after
purchase and
before patent.

" SEC. 12. *And be it further enacted* : That, prior to
any entries being made under and by virtue of the pro-
visions of this act, proof of the settlement and improve-
ment thereby required shall be made, to the satisfaction
of the Register and Receiver of the Land District in
which such lands may lie, agreeably to such rules as
shall be prescribed by the Secretary of the Treasury,
who shall each be entitled to receive fifty cents from each
applicant for his services to be rendered as aforesaid;
*and all assignments and transfers of the right hereby secured,*
*prior to the issuing of the patent, shall be null and void.*"

We do not think that the last clause of this section
sustains the position assumed. The right here men-
tioned, as being secured by the act of which this section
is a part, is the right of preemption. Such right is de-
fined to be, the right " which a person, who
has complied with certain requirements of the
law, has, to purchase a portion of the public lands at the
minimum price, to the exclusion of all others. It is
wholly a creature of the statute, and is exercised and
exhausted as soon as the purchase and entry are made."
2 Minn., 168. If these views be correct as to what the
expression, " right hereby secured," as used in said sec-

2. Construction of
preemption act
of 1841.

tion twelve, relates, and as to the meaning of the term
"preemption," it would seem to follow, that it is only of
such *right of preemption*, that an assignment or transfer,
prior to the issuance of the patent, is prohibited; and
that upon the exercise of such right by the purchase and
entry of the land, which has been made the subject
thereof, there would be nothing substantial upon which
the prohibition could act. It is true, that such prohi-
bition may be held to operate so as to prevent the assign-
ment and transfer of the preemptor's certificate of pur-
chase from being made in such a way as to enable the
assignee to receive a patent for the land covered by it,
in his own name; but this is all that can be claimed
for it. There are good and no doubt sufficient reasons
for saying that the prohibition reaches to this extent,
though it does not seem important that they should be
given here. But to say that, because the assignment of
a preemption certificate will not be sufficient to author-
ize and cause the patent which is supposed to
follow it, to be issued in the name of the
assignee, the preemptor cannot dispose of his
purchase in any other way, or at all, is, to our minds,
reaching a conclusion which does not follow, and which
has no sufficient premises upon which to rest. But, to
return to the line of argument above suggested, it is to
be observed, that, from the time of the preemption, and
payment of the price of the land, the rights and rela-
tions of the preemptor are changed. He has now become
a purchaser. Relative to this point, the same Judge
above quoted from, remarks that, "After the entry, the
rights belonging to the preemptor, *as to the land,* are
those acquired by reason of his having purchased a por-
tion of the public land, and are not different from those

3. Preemptor may sell land, after entry, and before patent issues.

of other purchasers." By reason of his compliance with all of the requirements of the law in respect of his preemption, he was entitled to the exclusive right to purchase a particular portion of the public domain; and having paid therefor, he has obtained the same legal title or right to his land as such other purchasers have to theirs; and he cannot be deprived of such right, nor the benefits to be derived therefrom. As a matter of course, this conclusion is reached upon the presumption that every successive step in his proceedings has been free from fault or fraud; and this is implied in the statement made. It is further to be observed in this connection, that when the preemptor has properly and honestly " proved up," as it is called, and has paid for his land, which he must do on receiving his certificate of purchase, he has done all that the law requires of him, or any other purchaser, and indeed all that he can do in the premises. His rights are no longer inchoate, but have become fixed and absolute; and it only remains for the government, through its proper officers to furnish him with the verification of his title, by the issuance to him of the patent. To the preemptor himself this, it seems, must go; but in case of a previous sale of the land, such patent inures to the benefit of his grantee upon plain and well-established principles. The right which such preemptor has to his patent is full and complete, from the date of the purchase, although as a matter of fact, the receiving of it may be, and often is, for a long time delayed. But this fact cannot operate to his detriment, and it ought not. He already has, or may have, all of the elements of a perfect title as defined by the books, to-wit, the actual possession—the right of possession, by virtue of having complied with the law—and the

<p style="margin-left:2em"><em>Patent issues to preemptor for benefit of his grantee.</em></p>

right of property, by reason of having purchased and paid the consideration for his land. If this be true, it is surely in vain to contend against the proposition sought to be established in this case. But a further argument is to be drawn from the language which has been used in the section referred to. The word *land* is not used at all, nor any corresponding term ; and it seems reasonable to suppose that if a sale of the " land," after the right spoken of had been exercised, had been intended to be prohibited, such intention would have been expressed in the clearest and most unmistakable terms. This certainly is not the case here. Another argument is to be derived from the fact, that in many of the states the same view as above expressed has been recognized, and a policy in harmony therewith has been adopted.

But it is perhaps unnecessary to pursue the subject further, as in our opinion enough has already been advanced, to show sufficient grounds upon which to base our conclusions. We shall therefore hold that the prohibition referred to only prevents the assignment and transfer of the right of preemption, prior to an entry of the land preempted, and the issuing of a patent to the assignee in his own name, in case of a sale of such land ; and that the right to sell the land so preempted, or his interest therein, rests with the preemptor from the date of entry and purchase. 2 Minn., 155; 5 Wis., 475.

The judgment heretofore rendered herein is reversed, and the case remanded to the district court, with instructions to dismiss the action as to Amelia A. Swifle so that her rights may be saved, and to enter judgment against the rest of the defendants, upon the facts found by the referee, and in accordance with the views expressed in this opinion.

All the Justices concurring.