JULIA A. STINSON et al. v. HANNAH C. GEER et al.

1. LAND WARRANT — *Rights of Locater.* The location of a United States military land warrant on a quarter-section of public land gives the locater or his grantee an interest in the land, where the locater is without fault or fraud, and is payment for the same.

2. ———— *Right of Locater to Sell Land.* If the holder of a military land warrant locates the same upon public land and receives the usual certificate therefor, he then has the right to transfer or sell the land; and, if he exercise such right before a patent has issued to him, the patent inures to the benefit of his grantee.

3. LOCATION CERTIFICATE, *Sold — Interest of Grantee.* Where the locater of a military land warrant locates the same upon public land, and subsequently sells, transfers and assigns his certificate of location to another person for a valuable consideration, but does not in all respects follow the forms and regulations for assignment of land

warrants and locations, as prescribed by the commissioner of the general land office, the grantee takes the interest and estate of the locater, and becomes the equitable owner thereof.

4. CONVEYANCE, *Executed in Another State, as Evidence.*  A conveyance or other instrument of writing concerning land situate in this state, but executed and acknowledged in conformity with the laws of another state, is as valid as if executed within this state, in conformity with the laws of this state; and every such conveyance or instrument may, with the certificate of acknowledgment, be read in evidence without further proof.

5. PAPER *Filed in Land Office — Copy as Evidence.*  The copy of any paper and document lawfully deposited in the office of the register or receiver of any land office of the United States within this state, when duly certified by the register or receiver having the custody of such paper, or document, may be received in evidence in the same manner and with like effect as the original.

## Error from Shawnee District Court.

EJECTMENT.  Judgment for defendants, *Hannah C. Geer* and another, on January 14, 1886.  The plaintiffs, *Julia A. Stinson* and four others, bring the case to this court.  The material facts appear in the opinion.

*Quinton & Quinton,* for plaintiffs in error.

*Wheat, Chesney & Curtis,* for defendants in error.

The opinion of the court was delivered by

HORTON, C. J.: This was an action in the court below by Julia A. Stinson *et al.,* against Hannah C. Geer *et al.,* to recover the possession of the west half of the northwest quarter of section 11, in township 13, range 16, in Shawnee county, as the legal owners thereof.  The defendants answered, claiming ownership and right of possession.  A jury was waived, and a trial had by the court.  The court made special findings of fact and conclusions of law, upon which judgment was rendered for defendants; to which plaintiffs excepted, and filed their motion for a new trial, which was overruled.  They bring their case to this court.

The facts as found by the court are these: On December 24, 1857, one Thomas R. Lord located a military land war-

rant, No. 60,149, at the United States land office at Lecompton, on the land in controversy, and upon June 1, 1860, the government of the United States issued a patent to Lord for the tract of land as above located. Upon October 12, 1859, in an action then pending in the district court of Shawnee county, Thomas N. Stinson recovered a judgment against Lord for $884 and costs; upon the 13th day of February, 1861, the land was sold at sheriff's sale to satisfy the judgment of Stinson, and return thereof made into the office of clerk of said district court. Upon the 16th day of October, 1861, the sheriff's sale and return thereof were examined by the court and confirmed, and the sheriff ordered by the court to make and deliver to Thomas N. Stinson, the purchaser at the sale, a deed to the premises. The sheriff neglected to make the deed before the death of the said Thomas N. Stinson; but on December 29, 1884, the then sheriff of Shawnee county was ordered to make deed to the premises sold to the heirs of Thomas N. Stinson, deceased. No notice of this application for the order was given to the defendants, or their grantees. In pursuance of this order, the sheriff, on December 31, 1884, executed and delivered to the heirs of said Thomas N. Stinson, deceased, a deed to the premises. On May 4, 1858, Thomas R. Lord sold and assigned to Henry S. Ward and his heirs and assigns the certificate of entry for the land located at the land office at Lecompton, December 24, 1857; Thomas R. Lord and wife, on December 27, 1859, executed, acknowledged and delivered a warranty deed in due form, conveying the land to Ward, his heirs and assigns forever, which deed was recorded in the register of deeds' office, of Shawnee county, January 11, 1860. It is conceded by the plaintiffs that "if the military land warrant was assignable, and if it was legally assigned upon the 4th day of May, 1858, and if such warrant and assignment were properly admitted in testimony, that judgment was rightfully rendered for the defendants."

I. It is said upon the part of the plaintiffs that the land warrant, having been issued under the act of March 3, 1855, was not assignable until June 3, 1858, and therefore as it was

assigned, if ever, upon the 4th day of May, 1858, the assignment was too early, and therefore void. It was decided in this court in *McKean v. Crawford,* 6 Kas. 112, that—

"The inchoate rights of a preëmptor of a portion of the public lands, who proves up his claim thereto, and enters the land, ripen into a perfect title to such land instantly on such entry; and he may sell and convey said lands, as an absolute owner thereof, before a patent is issued to him therefor. The right to transfer his land is complete in the preëmptor from the date of his entry and purchase thereof, and the receipt of the usual certificate therefor; and if he exercise such right before a patent has issued to himself, such patent inures to the benefit of his grantee."

The law is well settled that—

"A certificate of the location of the United States military land warrant upon a quarter-section of land, signed by the register of the land office where the location was made, is *prima facie* evidence that the land is the property of the locater, and that a location of a United States military land warrant on a quarter-section of land gives the locater or his grantee an interest in the land, and is a payment for the same." (*Butterfield v. Railroad Co.,* 31 Cal. 264. See also *Jackson v. Spink,* 59 Ill. 404; *Lytle v. The State,* 9 How. [U. S.] 314; *Robbins v. Bunn,* 54 Ill. 57; *Aldrich v. Aldrich,* 34 id. 32.)

When Lord entered the land in controversy at the government land office and paid for it with his land warrant, he acquired precisely the same equitable rights that he would have acquired in a similar transaction with a private individual. The government had no right, if he acted without fault or fraud, to cancel his contract or purchase. The testimony and findings show that Lord located his land warrant on December 24, 1857. The transfer or assignment to Ward was made May 4, 1858; therefore, within the authorities, the land warrant was legally assignable at the date it purports to have been assigned.

II. It is further said that the transfer or assignment of the land warrant is invalid because not made in compliance with the statute of the United States. The law enacted March 22, 1852, provided that the warrants or certificates of location

might be assigned "by deed or instrument in writing made and executed according to such form and pursuant to such regulation as may be prescribed by the commissioner of the general land office, so as to vest the assignee with all the rights of the original owner of the warrant or certificate of location." The commissioner of the general land office issued a circular stating among other things that the assignment of a certificate of location "must be indorsed upon the certificate of location, be attested by two witnesses, and acknowledged before a register or receiver of a land office, a judge of a court of record, a justice of the peace, or a commissioner of deeds." The certificate in this case has no attesting witnesses, and is not acknowledged before any of the officers for such purposes designated, but before the mayor of Kansas City, Mo. The instructions for assignments of warrants and certificates of location must control the United States officials; and in this case, if the original certificate had been assigned to Ward in conformity with the forms and regulations of the commissioner of the general land office, and the office at Washington had been notified thereof, the patent would have issued to the assignee, Henry S. Ward, and not to Thomas R. Lord. But the failure of Lord to follow the regulations of the general land department in making the transfer or assignment of the certificate of location did not make such transfer or assignment void or worthless. There is no law in Kansas, nor any in Missouri, that has been called to our attention, requiring witnesses to any conveyance of any estate or interest in land; and if two witnesses and an acknowledgment before some official named in the circular of the general land office were necessary in order that the officers of the United States might be governed thereby, yet even if the transfer or assignment was defective or informal, the assignment or contract would be good between the parties; and as the plaintiffs have no higher or better title than Thomas N. Stinson, they are in no condition to complain of any defect or irregularity in the transfer.

It is clear, as between Ward and his grantees and Stinson and his heirs, that the transfer or assignment of the certificate

of location must be carried into effect by the courts. (*Gray v. Ulrich*, 8 Kas. 121; *Simpson v. Mundee*, 3 id. 181; *Dreutzer v. Baker*, 60 Wis. 179; *Dreutzer v. Lawrence*, 58 id. 598; *Grandin v. Hernandez*, 29 Hun, 401; *Wendell v. Wadsworth*, 20 Johns. 664; *Jewell v. Harding*, 72 Me. 126.)   The statute of Missouri authorized the mayor of Kansas City, Mo., to take and certify acknowledgments. (Session Laws of Missouri, 1853, p. 24; Session Laws of Missouri, 1851, p. 97.)

We think the assignment of the 4th day of May, 1858, transferred to Ward all the equitable title and interest of Lord to the land in controversy, and this assignment was further ratified by the deed of Lord and wife, dated December 27, 1859, which of course related back to the assignment of May 4, 1858.   The assignment was prior in time to any claim, lien or judgment of Thomas N. Stinson.

III. It is finally urged that the court committed error in admitting as testimony the certified copy of the land warrant and assignment of the certificate of location to Ward.   It is doubtful upon the record presented, whether any question has been properly raised against the competency of the testimony of the certified copy of the assignment.   Attached to the petition in error is the case-made: it does not purport to contain all the evidence produced before the trial court.   The case-made contains the following statement only as to the preservation of the evidence: "The foregoing was all the evidence in the case relative to said certificate of location.   Military land warrant No. 61,049."   Passing over this doubt, however, we dispose of the question as if the assignment was a part of the certificate of location.   Section 25, chapter 22, Comp. Laws of 1885, reads:

"All deeds, mortgages, powers of attorney and other instruments of writing, for the conveyance or incumbrance of any lands, tenements or hereditaments situate within this state, executed and acknowledged, or proved, in any other state, territory, or country, in conformity with the laws of such state, territory, or country, or in conformity with the laws of this state, shall be as valid as if executed within this state in conformity with the provisions of this act."

And § 26 of the same chapter further reads:

"Every instrument in writing conveying or affecting real estate which shall be acknowledged or proved, and certified, as hereinbefore prescribed, may, together with the certificates of acknowledgment or proof, be read in evidence without further proof." (Sections 51 and 52, ch. 26, Statutes of Kansas Territory, 183.)

The premises in dispute are situated in Shawnee county, within this state. The transfer or assignment of the certificate of location was executed and acknowledged in conformity with the law of Missouri. When Lord located his land at the government land office, he obtained the duplicate certificate of location. This duplicate was transferred to Ward; his grantee got the duplicate, and surrendered it to Charles B. Lines, the receiver of the land office, and thus obtained the patent; the duplicate was properly deposited in the government land office. The certified copy from that office therefore was admissible as testimony under the provisions of the statute. Section 372 of the civil code reads:

"Copies of all papers authorized or required by law to be filed or recorded in any public office, or of any record required by law to be made or kept in any such office, duly certified by the officer having the legal custody of such paper or record, under his official seal, if he have one, may be received in evidence with the same effect as the original, when such original is not in the possession or under the control of the party desiring to use the same."

And § 384 of the civil code expressly provides:

"Copies of all papers and documents, lawfully deposited in the office of the register or receiver of any land office of the United States within this state, and copies of any official letter or communication, received by the register or receiver of any such land office, from any department of the government of the United States, when duly certified by the register or receiver having the custody of such paper, document, letter, or other official communication, shall be received in evidence in the same manner and with like effect as the originals."

The trial court therefore committed no error in receiving the evidence of Charles B. Lines, who testified that at the date

of the copy he was the receiver of the local land office at Lecompton, and that he signed as such receiver the certified copy offered in evidence; and the court committed no error in receiving as testimony the copy of such certificate.

Judgment affirmed.

All the Justices concurring.